UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
AVIS BUDGET CAR RENTAL, LLC,

                    Plaintiffs,

      - against -

JD2 ENVIRONMENTAL, INC., GEMSTAR
CONSTRUCTION CORPORATION, and
GEOTRACK, INC.,

                   Defendants.
-----------------------------------------------------X
JD2 ENVIRONMENTAL, INC. and
GEMSTAR CONSTRUCTION
CORPORATION,

          Third-Party Plaintiffs,

      - against -

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY and GEOTRACK, INC.,

          Third-Party Defendants.
-----------------------------------------------------X

**AMENDED
MEMORANDUM & ORDER**
Case No. 12-cv-5010 (PKC)

PAMELA K. CHEN, United States District Judge:

      While excavating at a construction site leased by Plaintiff Avis Budget Car Rental, LLC

("Plaintiff," "Avis," or "Avis Budget") and operated by Third-Party Defendant Port Authority of

New York and New Jersey (the "Port Authority" or "PANJNY") at John F. Kennedy International

Airport ("JFK"), Defendant Gemstar Construction Corporation ("Gemstar"), a subcontractor for

Defendant JD2 Environmental, Inc. ("JD2"), struck and damaged an underground sewer line,

causing complaints about a sewage backup from other JFK tenants.[1]

---

[1] Prior to the incident, Defendant Geotrack, Inc. ("Geotrack"), a now-bankrupt company retained by the Port Authority, had failed to indicate, or "mark out," any underground utilities on the Avis project site map. All parties have filed motions for default judgment against Geotrack.

To recover the cost of the repair, Avis filed the instant action against JD2, Gemstar, and Geotrack asserting claims for breach of contract, breach of express warranty, contractual indemnification, negligence, and common law indemnification. In turn, JD2 cross-claimed against Gemstar for contribution and indemnification, contractual indemnification, and a failure to procure insurance, and against Geotrack for indemnification; and brought a third-party claim against the Port Authority and Geotrack for negligence. Likewise, Gemstar filed a counterclaim against Avis for negligence; cross-claims against JD2 for negligence, contractual indemnification, equitable indemnification, and breach of contract; and third-party claims against the Port Authority and Geotrack for negligence and indemnification. Lastly, the Port Authority filed cross-claims against Geotrack under various theories, including negligence, indemnification, and breach of contract.

This matter is now before the Court on Avis's, JD2's, and the Port Authority's separate motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). The Port Authority has also moved to dismiss for lack of jurisdiction. For the reasons stated below, Avis's motion for summary judgment is denied; JD2's motion for summary judgment is granted in part and denied in part; and the Port Authority's motion to dismiss is granted.

## BACKGROUND

I.    <u>Relevant Factual History</u>[2]

This case dates back to 2008, when Avis first began to explore the replacement of certain piping located underground at its JFK facility (the "Project"). (Avis 56.1 ¶ 1.) For the Project,

---

However, on August 25, 2014, the Honorable Marilyn D. Go ruled that these motions would be held in abeyance until after trial.

[2] The facts in this section are drawn from the statements contained in the parties' 56.1 statements. The parties have filed a number of 56.1 statements and responses for the Court's consideration. Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that the

Avis retained JD2, an engineering consulting firm, which designs and oversees underground storage tank installations. (*Id.* ¶ 2-3.) After several years of negotiations, Avis and JD2 entered into an agreement dated December 21, 2011 governing the Project. (Dkt. 98-23 at 3 (the "Agreement" or "Agr.").[3] As part of the Agreement, JD2 agreed "to provide design and oversight services for the replacement of the existing underground storage tank (UST) system." (Agr. 3.) JD2 subsequently contracted with Gemstar, a subcontractor, to perform the actual excavation work at the Avis site. (Avis 56.1 ¶ 17.) JD2 project manager Richard Hart, (*id.* ¶ 8), and Gemstar project manager Carmelo Saia, (*id.* ¶ 19), oversaw the Project.

A.      Port Authority Approval Process

As part of the Project, the Port Authority required JD2 to submit a Tenant Alteration Application ("TAA") for approval. (*Id.* ¶ 24.) This allowed the Port Authority's Tenant Liaison Office and Tenant Review Office to review JD2's drawings, and required JD2's compliance with applicable codes and regulations. (*Id.*) On October 6, 2009, JD2 submitted its first set of Project drawings to the Port Authority. (*Id.* ¶ 29.) After review, the Port Authority conditionally approved JD2's TAA submission on November 9, 2009. (PANJNY 56.1 ¶ 121.) It did, however, attach Rider A, which required JD2 to "show all existing underground utilities" and "[p]rovide a note that prior to excavation, the contractor [*i.e.*, Gemstar] shall notify 'One Call'[4] and the [Port Authority] facility for underground utility mark outs" on the design plan. (*Id.* ¶ 122.)

_____

Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

[3] All page references correspond to page numbers generated by the Electronic Court Filing ("ECF") system, and not the document's internal pagination.

[4] One Call is a nationwide organization of utility owners that, *inter alia*, notifies owners when there "is construction close to the utilities that they own." (Danko Tr. 19:7-21.) All references to "Danko Tr." refer to Richard Danko's deposition transcript in this case (Dkt. 107-7),

JD2 responded to the Port Authority with updated drawings on April 27, 2010. (*Id.* ¶ 128.) But, because JD2 "didn't know where the underground utilities were located," (Hart Tr. 79:17-21)[5], JD2 included two disclaimers in its response: (1) "that 'All known Utilities are shown'" and (2) "that 'A note has been added to the drawings to reflect that only the known utilities are shown.'" (PANJNY 56.1 ¶ 128.) According to JD2, it added these disclaimers to "indicat[e] to [Gemstar] that there may be unknown utilities underneath the ground of the work area[.]" (Hart Tr. 86:5-9.) On February 18, 2011, JD2 informed the Port Authority "that the scope of work had changed from an upgrade of single wall steel USTs to a replacement UST project," (PANJNY 56.1 ¶ 129), and included the same disclaimers that were part of its April 27 response, (*id.* ¶ 130).

On December 7, 2011, Port Authority, Gemstar, and JD2 representatives attended a pre-construction meeting with the Port Authority. (Avis 56.1 ¶¶ 52, 55.) The agenda, which was read aloud at the meeting, included the requirements "that prior to any underground work the One Call Center would be notified, that there would be a positive response from each service provider, and that work could only proceed after each utility shown on the contract documents was clearly marked in the field." (*Id.* ¶ 57.) The agenda also provided that either Gemstar or JD2 could consult utility drawings available at the JFK Tenant Liaison Office. (*Id.* ¶ 58.)

B.    Mark-Out of Avis Project Site

On November 28, 2011, Gemstar, as part of its "responsibility" as an excavator, contacted One Call to mark out the Avis Project site, (JD2 56.1 ¶ 61; Avis 56.1 ¶ 71), including the "entire

---

attached by the Port Authority as Exhibit G to the Affidavit of Margaret Taylor Finucane in Support of Third-Party Defendant's Motion for Summary Judgment, (Dkt. 107).

[5] All references to "Hart Tr." refer to Richard Hart's deposition transcript in this case (Dkt. 107-2), attached by the Port Authority as Exhibit B to the Affidavit of Margaret Taylor Finucane in Support of Third-Party Defendant's Motion for Summary Judgment, (Dkt. 107).

Avis Rent-A-Car parking lot." (JD2 56.1 ¶ 64.) For the Avis Project, Geotrack performed two mark-outs: one performed by Steve Westby and another by David Bowline.[6]

Prior to Westby's mark-out of the Avis Project site on December 2, 2011, he called Gemstar and left a message. (Avis 56.1 ¶ 72) Because Westby did not hear back from Gemstar, he was "unaware where any excavation would be taking place." (*See id.* ¶ 73.) Westby's map utilized during the mark-out "showed a sewer line in the area," so he accordingly opened a sewer manhole and "noted that the manhole was very deep, and it was going towards the highway, which was not on Port Authority property." (*Id.* ¶ 74.) Westby, however, did not mark out the sewer line at the Avis Project site. (Avis 56.1 ¶ 74; PANJNY 56.1 ¶ 141.) He has no explanation for this failure. (Avis 56.1 ¶ 74.)

On December 12, 2011, Bowline performed a second mark-out of the Avis Project site, using a different utility map than Westby. (*Id.* ¶ 75.) This map showed an "unverified" sewer line, (JD2 56.1 ¶ 73), "running right through" a fenced-in construction area at the site, (Bowline Tr. 38:17-39:7).[7] Like Westby, Bowline did not mark out the sewer line. He did not do so because he "was unable to make a line of sight" and "actually verify that the line was there." (*Id.* 39:8-13.)

---

[6] Generally, the first step in the mark-out process at any Port Authority site, including JFK, is for the Port Authority to contact Geotrack, which has been the Port Authority's mark-out contractor since 1995. (Avis 56.1 ¶ 67; PANJNY 56.1 ¶ 112 ) Next, Geotrack contacts the contractor responsible for the site and "obtain[s] a print of utilities in the area from the [Port Authority's] survey division and [marks out] the site." (Avis 56.1 ¶ 67.) Following this step, Geotrack works to confirm the utilities at the site by, for example, opening manholes. (Westby Tr. 22:20-23:8.) All references to "Westby Tr." refer to Steven Westby's deposition transcript in this case (Dkt. 98-14), attached by Avis as Exhibit 12 to the Declaration of Thomas M. Mealiffe in Support of Plaintiff's Motion for Summary Judgment, (Dkt. 98-2).

[7] All references to "Bowline Tr." refer to David Bowline's deposition transcript in this case (Dkt. 98-15), attached by Avis as Exhibit 13 to the Declaration of Thomas M. Mealiffe in Support of Plaintiff's Motion for Summary Judgment, (Dkt. 98-2).

Bowline claims that he then contacted someone at Gemstar to tell him or her that there was a sewer line running "directly underneath the tank [that] they were going to remove." (*Id.* 43:15-18.) This testimony is at odds with the testimony of Gemstar's project manager Carmelo Saia, who testified that Westby gave Gemstar an "all clear" to start construction, and did not mention any contrary indication from Bowline. (Saia Tr. 128:4-12.)[8] Moreover, although the Port Authority had instructed Geotrack to notify the Port Authority if Geotrack failed to mark out a utility identified on a map, whether verified not, (PANJNY 56.1 ¶ 116), the parties have not identified anything in the record to suggest this occurred.

C.     Avis Project and Excavation Incident

On December 15, 2011, Gemstar commenced construction on the Project by driving sheet piling,[9] into the ground. (Avis 56.1 ¶ 94.) JD2 was not present. (*Id.* ¶ 110.) At approximately 11:45 am, Gemstar's employees encountered resistance, (*id.* ¶ 97), ceased excavating, and took a lunch break. (*Id.* ¶ 99.) After lunch, Gemstar's workers discovered a sinkhole in the excavation area. (PANJNY 56.1 ¶ 153.) To investigate, the employees dug "about 4 feet behind the sheet in order to find out why the sinkhole had developed." (*Id.* ¶ 156.) Saia then instructed the foreman "to backfill the sinkhole, (*id.* ¶ 157), which the employees subsequently did, (JD2 56.1 ¶ 83). For the first time, Saia contacted JD2, informing JD2 that Gemstar had hit an obstruction. (PANJNY 56.1 ¶ 158.) Neither JD2 nor Gemstar told the Port Authority. (*Id.* ¶ 159.)

---

[8] All references to "Saia Tr." refer to Carmelo Saia's deposition transcript in this case (Dkts. 98-4, 98-5), attached by Avis as Exhibits 2 and 3 to the Declaration of Thomas M. Mealiffe in Support of Plaintiff's Motion for Summary Judgment, (Dkt. 98-2).

[9] "Sheet piling," also referred to as "steel sheeting," is used to secure the perimeter of an excavation. (Avis 56.1 ¶ 90.) An excavator vibrates the piling with an electric hammer into the soil. (*Id.*) The Avis Project required 65 pieces of piling. (*Id.* ¶ 96.)

On December 16, 2011, JD2's project manager Richard Hart arrived on site. (Avis 56.1 ¶ 119.) Geotrack's Westby had a utility map showing that there was an unverified 24-inch Vitrified Clay sewer pipe in the same area where Gemstar had encountered the obstruction. (JD2 56.1 ¶ 89.) JD2 and Gemstar then decided to attempt to install another sheet in the ground, but it hit what was assumed to be the same obstruction as the day before. (Hart Tr. 161:24-162:8.) To further investigate the obstruction, Gemstar kept digging and "eventually a piece of clay pipe was found." (PANJNY 56.1 ¶ 169.) Eventually, the Port Authority sent trucks to the site. It informed JD2 and Gemstar "that the sewage [from] the breached line was backing up to other catch basins, heading up to airline facilities." (Avis 56.1 ¶ 132.)

After the incident, the Port Authority informed JD2 and Gemstar "that it was [their] responsibility to repair the sewer line." (JD2 56.1 ¶ 93.) Avis had Gemstar repair the line, which was completed in March 2012. (*Id.* ¶ 94.)

## DISCUSSION

I.     Standard of Review

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 173–74 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." *Id.* In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003) (citation and quotation omitted).

This standard imposes the initial burden on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Id.* at 324*; see also Anderson,* 477 U.S. at 256–57. The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7,* 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).)

The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here. *See Lauria v. Heffernan,* 607 F.Supp.2d 403, 407 (E.D.N.Y. 2009) (internal citations omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001). The Court addresses each of the party's motions in turn.

II.     Avis's and JD2's Cross-Motions For Summary Judgment

Avis has asserted claims against JD2 for breach of contract, breach of express warranty, contractual indemnification, and negligence.[10]   Avis and JD2 have filed cross-motions for summary judgment on each of these claims.

A.     Avis's Breach of Contract Claim Against JD2 (Count I)

Avis and JD2 cross-move for summary judgment on Avis's breach of contract claim.  To make out a viable breach of contract claim under New Jersey law, Plaintiff must show: "(1) a valid contract existed between plaintiff and defendant; (2) defendant breached this contract; (3) plaintiff performed under this contract; and (4) plaintiff was damaged as a result of defendant's breach." *W. v. IDT Corp.,* No. CIV A 01-4372, 2008 WL 762459, at *3 (D.N.J. Mar. 19, 2008) (internal citations omitted).[11]   The parties do not dispute that there was a valid contract between Avis and JD2 and that Avis performed its obligations under the contract.  The only remaining questions are whether JD2 performed its duties as set forth in the contract and whether Avis's damages are attributable to JD2's breach.

1.     *Breach of the Agreement*

According to the terms of the Agreement, JD2 had three tasks that are relevant to this dispute:

**Task 1: Design** – JD2 shall prepare design for the replacement UST system.  The drawings shall be certified by a Professional Engineer (PE) for submittal to the Port Authority of NJ/NY (Port).

---

[10] Avis has also asserted a claim for common law indemnification against JD2, Gemstar, and Geotrack, but does not address that claim in its summary judgment motion.

[11] The parties agree that "[t]he Agreement shall be interpreted and construed under the laws of New Jersey" pursuant to the choice-of-law clause contained in the Agreement.  (Dkt. 98-23 at 10 (the "Agreement" or "Agr.").)

**Task 2: Permit Approval** – JD2 shall coordinate with the PE, the Port and Avis Budget [on] the application and the permit approval process. Labor spent on this task may increase based on requests made by the Port.

**Task 3: Inspection and Oversight** – JD2 shall perform oversight of the contractor [*i.e.*, Gemstar] to ensure replacement activities are performed in accordance with Avis Budget standards and the Port approved drawings.

(Agr. 3.)

Avis argues that JD2 breached the Agreement by failing to: (i) show existing utilities on its design drawings; (ii) generally coordinate with the Port Authority; and (iii) properly oversee the Project. JD2 contends that it is entitled to summary judgment because its actions do not constitute a breach of the Agreement. Thus, whether or not JD2 breached the Agreement turns on how the Court interprets the Agreement's provisions.

"In a contract interpretation action, summary judgment is appropriate only where the contractual language is unambiguous." *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418-19 (3d Cir. 2013); *see also Fantozzi v. Axsys Techs.*, Inc., No. 07-cv-02667, 2008 WL 4866054, at *6 (S.D.N.Y. Nov. 6, 2008) (denying summary judgment because "genuine questions of material fact remain[ed]" where contract language was ambiguous); *Reed Elsevier, Inc. v. Inherent.com, Inc.*, No. CIV A 05-4048, 2006 WL 3827414, at *5 (D.N.J. Dec. 27, 2006) ("It is hornbook law that if the relevant terms in a contract are ambiguous, the issue must go to a jury."). Accordingly, "[a]lthough the interpretation of a written contract usually presents a question of law for the trial judge to resolve, when there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury." *W. v. IDT Corp.*, 2008 WL 762459, at *7 (internal citations and quotations omitted). "To determine whether an ambiguity exists, the court must consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." *Societe Generale v.*

*New Jersey Tpk. Auth.*, No. 03-cv-2071, 2005 WL 1630838, at *5 (D.N.J. July 11, 2005) (internal citations and quotations omitted). Because the Court finds that the Agreement's terms are ambiguous, both Avis's and JD2's motions for summary judgment are denied.

First, Avis argues that JD2 breached Task 1 of the Agreement by failing to indicate any underground utilities on its design drawing. JD2 narrowly interprets this provision, contending that the provision did not require JD2 to "conduct a mark out of the utilities . . . or to show utilities on plans." (Dkt. 110 at 11.) By contrast, Avis reads Task 1 broadly, claiming that the task of designing a replacement UST system had to involve showing underground utilities as part of the overall design. (Dkt. 98-33 at 12.)

To support their positions, both parties submit evidence of their intent when entering into the Agreement. Avis relies on the deposition testimony of David Piercey, Vice President of JD2, in which Piercey states that JD2 would generally ask a property owner about its underground utilities during the design phase. (Piercey Tr.[12] at 180:21-181:4; Dkt. 115 at 7.) However, the Court does not find Piercey's testimony to be so clear-cut. For example, another portion of Piercey's deposition raises a question as to whether identifying underground utilities is always, or even typically, part of the design process:

| Q. | Can you just tell me with regard to JD2 what you do as part of the design process for underground storage tank installations? |
|---|---|
| [Piercey]. | We'll look at the type of – depending on the type of facility and the volumes that they're going to use, the type of components that they need, if fiberglass or steel tank, flexible piping, fiberglass pipes. |
| Q. | Do you still do layout work as you did at the other two companies? |
| [Piercey]. | Yes, yes. |

---

[12] All references to "Piercey Tr." refer to David Piercey's deposition transcript in this case (Dkt. 98-7), attached by Avis as Exhibit 5 to the Declaration of Thomas M. Mealiffe in support of its Motion for Summary Judgment, (Dkt. 98-2).

| Q. | Does that still include determining what, if any, underground utilities are present? |
|---|---|
| [Piercey]. | *Sometimes*, yes. |
| Q. | What cases would it not include whether ground facilities are present? |
| [Piercey]. | Depending on – just *depends on that facility, what type of work is being done.* |
| Q. | Would you agree *part of the scope of overseeing* the design is to make a determination of whether or not the underground utilities present or not? |
| [Piercey]. | Yes. |

(Piercey Tr. 53:21-54:19 (emphasis added).)[13]

Furthermore, Article 8 of the Agreement creates more ambiguity.  It provides:

Avis Budget shall furnish, at no cost to Consultant [JD2], when applicable and if available and known to Avis Budget, information on the project side covered by the Agreement, describing physical characteristics, soil reports and subsurface investigations, *utility locations*, legal descriptions, and other information that may be reasonably requested by the Consultant.

(Agr. 9 (emphasis added).)  Although this provision only obligates Avis to provide information on utility locations "when applicable and if available and known" to Avis, a reasonable juror could conclude that it suggests that Avis—not JD2—was responsible for guaranteeing that all utilities were properly marked on the design plans.  Accordingly, considering the deposition testimony, extrinsic evidence presented, and the text of the provision itself, the Court finds that there are genuine issues of material fact as to whether the Agreement obligated JD2 to indicate underground utilities on the design drawing.

---

[13] Indeed, a reasonable juror could conclude that Piercey's testimony merely confirms JD2's position, *i.e.*, that it had to rely on another party mark out the site for underground utilities.

Second, Avis contends that JD2's failure to indicate underground utilities breached Task 2 of the Agreement to "coordinate" with the Port Authority. According to Avis, the duty to "coordinate" with the Port Authority required them to follow the Port Authority's instructions, which allegedly included directions to "show all existing underground utilities" on its diagram. (Dkt. 98-33 at 13-15.) The Court disagrees. The term "coordinate," which is not ambiguous, standing alone, cannot reasonably be interpreted to impose or imply a duty to "comply" with rules or requirements set by the party to be coordinated with. *See Societe Generale*, 2005 WL 1630838, at *5 ("When the 'terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."). Nor does Avis present any extrinsic evidence to suggest that the term "coordinate" with the Port Authority was intended to mean that JD2 had to indicate all underground utilities on its design plans.

Third, Avis's argument that JD2 breached Task 3 of the Agreement because it improperly oversaw the Avis Project by recommencing construction after Gemstar's employees hit an obstruction and by failing to be present at the site daily is similarly unavailing.[14] (Dkt. 98-33 at 17-18.) Absent extrinsic evidence to create ambiguity, which has not been presented to the Court, Task 3 of the Agreement does not impose such requirements. To the contrary, Task 3 broadly provides that, "JD2 shall perform oversight of the contractor [*i.e.*, Gemstar] to ensure replacement activities are performed in accordance with Avis Budget standards and the Port approved drawings." (Agr. 3.) Considering the provision's text and the lack of extrinsic evidence submitted

---

[14] Avis also asserts that JD2's failure to verify underground utilities is a breach of this provision. The clear language of this provision plainly does not cover this conduct.

by the parties, the Court finds that the Agreement did not specify the manner in which JD2 was supposed to carry out its "oversight" responsibilities with respect to Gemstar.[15]

Thus, Avis's motion for summary judgment on its breach of contract claim against JD2 is denied, and the only aspect of that claim that survives JD2's cross-motion is whether JD2 breached its obligations under Task 1 of the Agreement.[16]

### 2. *Proximate Cause*

Assuming that the evidence was sufficient to establish that JD2 breached the Agreement, Avis's summary judgment would still have to be denied because there exists a material factual dispute as to whether JD2's breach proximately caused Avis's damages. Proof that JD2's alleged breach caused Avis's damages is critical to Avis's breach of contract claim. *Merchants Ins. Co. of New Hampshire v. 3R Painting & Contracting Co.*, No. CIV. 06-1602, 2009 WL 3030126, at *3 (D.N.J. Sept. 16, 2009) ("Under New Jersey law, a plaintiff must prove that defendant's breach of contract was both a but for cause as well as a proximate cause of the damages, that is, that defendant's breach was a substantial factor in causing the damages") (internal citations and quotations omitted). "Where different reasonable and legally sufficient inferences of proximate

---

[15] Extrinsic evidence also confirms this interpretation of Task 3. For example, Michael Trastino, a Gemstar foreman for the Avis Project, noted that JD2's "oversight" on other projects would mean that they would only "come out from time to time." (Trastino Tr. 23:16-19.) All references to "Trastino Tr." refer to Michael Trastino's deposition transcript in this case (Dkt. 109-24), attached by JD2 as Exhibit V to the Declaration of Russell McBrearty in Support of JD2's Motion for Summary Judgment, (Dkt. 109-2).) The Court notes that Trastino's name appears to be misspelled as "Tristano" in McBrearty's declaration.

[16] The parties agree that JD2 did not mark out the utilities itself so there is no question that if the provision required such conduct, then JD2 is in breach.

cause are possible, the question is for the jury." *Shop Vac Corp. v. BCL Magnetics Ltd.*, No. 04-cv-262, 2005 WL 2739161, at *7 (N.D.N.Y. Oct. 24, 2005).[17]

Avis argues that the Court should grant summary judgment because it is undisputed that JD2's breach of contract, coupled with Gemstar's actions after striking the pipe on the first day, was the proximate cause of the damages Avis suffered. (Dkt. 115 at 18.) JD2, however, credibly claims that Geotrack's "failure to mark out the sewer line . . . was the proximate cause" of any damages. (Dkt. 109-55 at 18.) Whether or not JD2's breach of the Agreement was the proximate cause of Avis's damages is a genuine issue of material fact that a jury must resolve. *See Bank of New York Mellon Trust Co. v. Morgan Stanley Mortgage Capital, Inc.*, No. 11-cv-0505, 2011 WL 2610661, at *7 (S.D.N.Y. June 27, 2011) ("The answer to [whether a breach of contract was the proximate cause of damages" is appropriately left to the finder of fact.").

For instance, a reasonable juror might conclude that Geotrack's failure to mark out the utility was an intervening cause that insulates JD2 from liability. As explained by Geotrack's Westby:

| | |
|---|---|
| Q. | When you had the utility map when you did that mark out, was there anything on the utility map that showed any sewage lines? |
| [Westby]. | Yes. |
| Q. | . . . Was the sewage line in the area where you performed the mark out? |
| [Westby]. | Yes. |
| Q. | What do you mean? |

---

[17] The Court considers New York and New Jersey law "[b]ecause there is no conflict between the substantive rules of New York and New Jersey regarding breach of contract." *Bierer v. Glaze, Inc.*, No. 05-cv-2459, 2006 WL 2882569, at *4 n.3 (E.D.N.Y. Oct. 6, 2006); *Leggett & Platt, Inc. v. CM Mattress, LLC*, No. 14-cv-3277, 2015 WL 7281635, at *2 n.1 (E.D.N.Y. Nov. 16, 2015) (applying New York law because there was no conflict with New Jersey or Missouri breach of contract principles).

| | |
|---|---|
| [Westby]. | It was borderline. It was in there. |
| Q. | It was in the area? |
| [Westby]. | Uh-hum. |
| Q. | Did you mark that sewer line out? |
| [Westby]. | At the time, no. |
| Q. | Why didn't you mark [that] sewer line out? |
| [Westby]. | I don't know. |
| Q. | Would it be a normal function of your job when performing a mark out to mark sewer lines out? |
| [Westby]. | Yes. |

(Westby Tr. 41:13-42:12.)

Another intervening act for the jury to consider is Gemstar's failure to request the proper

mark-out from Geotrack. As Geotrack's Bowline stated:

| | |
|---|---|
| Q. | What do you mean [Gemstar] should have called a separate ticket in? |
| [Bowline]. | Whenever you're doing excavation, the law says you need to specifically say what type of excavation you're doing. The ticket was for removing a tank. I don't know the ins and outs of how to remove a tank. I don't know that, as a locator, that's not my job to know that they have to drive pile to do that. I don't know how deep it is, and as I recall the ticket itself, that's where it's supposed to say how deep they're going, and I don't recall what the ticket said either. |
| Q. | If the ticket had stated that they were going to be driving piles, would you have done anything differently? |
| [Bowline]. | I would have stopped them. I would have called them and said don't do anything until I've marked [the sewer line]. With the tank sitting on top of the line, what I was calling to tell him is, you better be careful and make sure you don't go too deep with that because it's sitting on top of it. Now, who puts a tank on top of a sanitary line, but that's not my job to determine that. You know, I question all |

> those things, but I'm not an engineer. I'm just a locating, underground utility locator.

(Bowline Tr. 44:14-45:19.)

These potential intervening causes create questions of fact for the jury to resolve at trial. Thus, whether JD2's breach of the Agreement was the proximate cause of Avis's damages is a question of material fact that must also be resolved by the jury.

Accordingly, because there are genuine issues of material fact with respect to both the obligations of Task 1 of the Agreement and whether JD2's alleged breach was the proximate cause of Avis's damages, Avis's and JD2's cross-motions for summary judgment on Avis's breach of contract claim are both denied.

### B. Avis's Negligence Claim Against JD2 (Count IV)

Avis's negligence claim resembles its breach of contract claim against JD2 and is inappropriate for resolution at the summary judgment stage for similar reasons. "To prevail on a cause of action in negligence under New York law, the [p]laintiff must prove: (1) that the defendant owed a duty to him; (2) that the defendant breached this duty; and (3) that this breach was the proximate cause of the plaintiff's injury." *Boria v. Port Auth. of New York & New Jersey*, No. 95 CV 4912 (SJ), 1998 WL 34588, at *3 (E.D.N.Y. Jan. 29, 1998).[18] Moreover, "[a] claim of professional negligence requires proof that there was a departure from accepted standards of practice and that the departure was a proximate cause of the injury." *Travelers Indem. Co. v. Zeff Design*, 875 N.Y.S.2d 453, 456 (N.Y. App. Div. 2009). Proximate cause is generally "considered

---

[18] Where a federal court sits in diversity, the forum's, *i.e.* New York's, choice-of-law rules apply. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012). However, "[a] choice-of law analysis need not be performed unless there is an actual conflict between the applicable rules of two relevant jurisdictions." *Id.* Here, neither party alleges that there is a conflict between New York's and another jurisdiction's laws on any claims not arising out of the Agreement. Accordingly, the Court applies New York law to all other claims.

a question of fact" for the jury. *Rittenhouse v. A. Star Container Serv.*, No. 86-cv-5876, 1988 WL 112898, at *3 (S.D.N.Y. Oct. 17, 1988) (internal citations omitted).

       1.   *Duty*

JD2 asserts that Avis's negligence claim fails because it "is based on breach of contract and there is no evidence that a legal duty independent of the contract has been breached." (Dkt. 110 at 22.) "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). There are instances, however, where "New York courts have allowed parties to assert professional malpractice claims together with breach of contract claims." *City of Kingston Water Dep't v. Charles A. Manganaro Consulting Engineers, P.C.*, No. 01-cv-1317, 2003 WL 355763, at *4 (N.D.N.Y. Feb. 13, 2003). In determining whether a party owes a duty independent of an underlying contract, courts look at factors, including whether a party possesses certain expertise, the injury is "typical of tort claims," and failure to perform the underlying contract could "result in catastrophic consequences." *See State Farm Fire v. Advanced* Chimney, No. 13-cv-4608, 2014 WL 4438899, at *7 (E.D.N.Y. Aug. 11, 2014), *report and recommendation adopted*, No. 13-cv-4608, 2014 WL 4439102 (E.D.N.Y. Sept. 8, 2014).

Here, the Court finds that JD2 owed a separate and independent duty to Avis apart from its underlying contractual duties. JD2 "specializes in the design and oversight of maintenance and installation of aboveground fuel storage tanks . . . and underground storage tanks," and accordingly possesses certain, relevant expertise. (JD2 56.1 ¶ 12.) Considering this expertise and the fact that Avis is alleging damages arising not from JD2's non-performance of the Agreement, but from its alleged negligence in failing to properly oversee a project within JD2's expertise, Avis's claim is more "typical of [a] tort claim" than a breach of contract claim. *See State Farm*, 2014 WL

4438899, at *8 (finding independent duty existed where plaintiff was "not seeking the benefit of the contractual bargain," but instead sought damages for his damaged property). Indeed, the damage that ensued when Gemstar hit the sewage line highlights the tort-like nature of this claim. When the sewer line was hit, "[t]he Port Authority informed JD2 and Gemstar that the sewage [from] the breached line was backing up to other catch basins, heading up to airline facilities. Trucks had to be mobilized [to] pump the catch basin and prevent sewage from overflowing into an airline kitchen." (Avis 56.1 ¶ 132 (internal citation omitted).) Accordingly, it is clear that JD2 owed a duty to Avis to exercise reasonable care that existed separately from its contractual obligations to Avis. *See Crown Castle USA Inc. v. Fred A. Nudd Corp.*, No. 05-cv-6163T, 2008 WL 163685, at *10 (W.D.N.Y. Jan. 16, 2008) (holding that there was a more "generalized duty of care" where conduct of engineers caused party to incur expenses), *modified on reconsideration on other grounds,* No. 05-cv-6163T, 2008 WL 3841298 (W.D.N.Y. Aug. 13, 2008).

2.    *Breach*

Because JD2 owed Avis a duty to exercise reasonable care, the next question is whether JD2 breached this duty. "Generally, once a duty is found, the question of breach of duty is one of fact for the trier of fact to resolve unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Boria*, 1998 WL 34588, at *3. Here, for many of the same reasons discussed with respect to Plaintiff's breach of contract claim, reasonable minds could differ as to whether JD2 breached its duty to exercise reasonable care with respect to the Avis Project. For example, although Avis argues that "JD2 has conceded that its job . . . was to obtain utility drawings," JD2's own project manager, Richard Hart, testified that he believed that it was "not standard" for an overseeing contractor such as JD2, to "request drawings on underground facilities" because "typically a utility mark-out company has to be called prior to digging." (Hart

Tr. 34:11-21.)[19]  Thus, factual issues, such as whether failing to request drawings constituted a breach of duty, preclude summary judgment on Avis's negligence claim against JD2.

### 3. *Proximate Cause*

Assuming Avis can establish that JD2 failed to exercise reasonable care in its oversight of the Avis Project, the Court must determine whether Avis's damages can be attributed to such failure.  Just like the issue of proximate cause for Avis's breach of contract claim, however, "[a]s a general rule, the question of proximate cause [in a negligence claim] is to be decided by the finder of fact."  *Boria*, 1998 WL 34588, at *4 (internal citation omitted).  This is because "the inquiry in each case" is "unique."  *Id.*  Although Plaintiff insists that "[t]here can be no question that [the] failures by JD2 were a proximate cause of the damage to the sewer pipe," (Dkt. 98-33 at 24), the Court declines to draw such a conclusion as a matter of law for the same reasons it could not conclude that Plaintiff established proximate cause on its breach of contract action.

Accordingly, the Court finds that there are genuine issues of material fact with respect to whether JD2 breached its duty of care for purposes of Avis's negligence claim, and, assuming that JD2 did, whether that breach is the proximate cause of Avis's damages.  Avis's and JD2's cross-motions for summary judgment on Avis's negligence claim are therefore denied.

### C. Avis's Breach of Express Warranty Claim Against JD2 (Count II)

Avis and JD2 also cross-move for summary judgment on Avis's breach of express warranty claim, which is essentially another breach of contract claim.  To state a breach of express warranty

---

[19] Avis argues that the Court should disregard the declaration submitted by Richard Hart because it contradicts his prior deposition testimony.  The Court declines to address this issue because the Court does not rely on Hart's declaration in reaching its summary judgment decision.  In addition, because the Court need not rely on either side's expert testimony in reaching its decision on summary judgment, the Court declines to opine on the admissibility of the submitted expert testimony.

claim, Plaintiff must show: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, No. CIV. 14-277, 2015 WL 4914477, at *4 (D.N.J. Aug. 18, 2015).[20]

The warranty in the Agreement states the following:

> Consultant warrants its services are performed, within the limits prescribed by the Agreement, with the usual thoroughness and competence of the consulting engineering profession including the various disciplines employed by the Consultant in performing its services hereunder. No other warranty or representation, either express or implied, is included or intended under this Agreement.

(Agr. 11.)

Thus, the question at this stage of the case is whether the Court can determine, as a matter of law, if JD2 performed its services "with the usual thoroughness and competence of the consulting engineering profession." Naturally, this claim overlaps substantially with Avis's breach of contract and negligence claims, and for similar reasons, the Court finds that there are questions of fact for the jury to decide as to whether JD2 breached the warranty. The jury must determine whether JD2's actions were taken "with the usual thoroughness and competence of the consulting engineering profession." Therefore, Avis's and JD2's cross-motions for summary judgment on Avis's express warranty claim are denied.

---

[20] The Court analyzes Avis's breach of express warranty claim under New Jersey law because the warranty is in the Agreement, which is governed by New Jersey law. Regardless, New York's elements for breach of express warranty are similar. *See PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 369 (S.D.N.Y. 2014) (Plaintiff must show that: "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant.").

D.    Avis's Contractual Indemnification Claim Against JD2 (Count III)

Avis, relying on many of the same arguments it made in support of its breach of contract and warranty claims, also asserts a contractual indemnification claim.[21]  Here, the Agreement's indemnification clause reads in pertinent part: "Each party agrees to indemnify, hold harmless, and defend the other from and against all loss and expense to the extent arising out of bodily injury and property damage *caused by* the negligence or intentional misconduct or omissions of the indemnifying party, its agents, employees or subcontractors."  (Agr. 10 (emphasis added).)[22]  For the Court to grant summary judgment, Avis bears the burden of showing that there is no genuine issue of material fact as to whether the damage was caused by JD2's negligence, intentional misconduct, or omissions.  Because the Court cannot conclude as a matter of law that JD2 was negligent, it also cannot resolve the issue of whether JD2 must indemnify Avis under the Agreement.  *See, e.g., Pederson v. Powell-Duffryn Terminals, Inc.*, 34 F. Supp. 2d 915, 922 (D.N.J. 1999) (denying summary judgment where there had not yet been a finding of underlying negligence).[23]  Accordingly, Avis's and JD2's cross-motions for summary judgment on their respective contractual indemnification claims are denied.

---

[21] The parties do not dispute the validity of the contractual indemnification clause contained in the Agreement.

[22] Although the indemnification agreement provides for indemnification by both Avis and JD2, JD2 does not appear to move for contractual indemnification from Avis.

[23] *See also Rodriguez v. City of New York*, No. 13-CV-00327, 2015 WL 4078618, at *6 (E.D.N.Y. July 6, 2015) (denying summary judgment on contractual indemnification claim where party's negligence had not yet been established); *see also Moss v. McDonald's Corp*., 825 N.Y.S.2d 497, 498 (N.Y. App. Div. 2006) (reversing summary judgment grant on contractual indemnification claim under Labor Law § 200 because underlying negligence claim was dismissed as a matter of law).

III.  Avis's Motion For Summary Judgment Against Gemstar on Its Negligence Claim (Count V)

Avis also moves for summary judgment on its negligence claim against Gemstar.  As discussed above, "[t]o prevail on a cause of action in negligence under New York law, the plaintiff must prove: (1) that the defendant owed a duty to him; (2) that the defendant breached this duty; and (3) that this breach was the proximate cause of the plaintiff's injury."  *Boria*, 1998 WL 34588, at *3; *Gayle v. Nat'l R.R. Passenger Corp.*, 701 F. Supp. 2d 556, 562 (S.D.N.Y. 2010).  Because there are genuine issues of material fact with respect to whether Gemstar was negligent, Avis's motion for summary judgment is denied.

A.  Duty

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Aegis Ins. Servs., Inc. v. 7 World Trade Co.,* 737 F.3d 166, 177 (2d Cir. 2013) (internal citations and quotations omitted).  "In general, the existence of a duty may arise either under common law principles or by statute."  *Medina v. Delta Air Lines, Inc.*, No. 09-cv-4018, 2011 WL 3625110, at *4 (E.D.N.Y. Aug. 16, 2011) (internal citations and quotations omitted).  Here, Avis contends that Gemstar breached its duty of care under statute and common law principles.

Regarding Gemstar's statutory duties, Avis refers to Part 753 of Title 16 of New York's Codes, Rules, and Regulations ("§ 753-3.10"), which governs the statutory duties of "excavators":[24]

---

[24] "Excavator" is defined as "[a]ny person who is engaged in a trade or business which includes the carrying out of excavation or demolition; provided, however, that an individual employed by an excavator and having no supervisory authority other than the routine direction of employees over an excavation or demolition, shall not be deemed an excavator for the purpose of this Part.  The act of any employee or agent of any excavator acting within the scope of his or her official duties or employment shall be deemed to be the act of such excavator."  N.Y. Comp. Codes

**Section 753-3.10. Requirements concerning contact and damage to underground facilities**

(a) Excavators shall take all reasonable precautions to prevent contact or damage to underground facilities and their protective coatings, including but not limited to, compliance with any reasonable directions or accepted engineering practices given by affected underground facility operators.

(b) In the event of contact with or damage to an underground facility, the excavator shall immediately notify the operator of the facility.

(c) All excavation or demolition in the immediate vicinity of the contacted or damaged portion of the underground facility shall be suspended until such portion is repaired and the operator advises the excavator that excavation or demolition may proceed.

(d) No backfilling shall be done by the excavator in the vicinity of the contact or damage until the operator conducts an inspection and makes any necessary repairs; and, the excavator shall undertake no repairs unless and until authorized by the operator.

N.Y. Comp. Codes R. & Regs. tit. 16, § 753-3.10.

In addition, Avis asserts that Gemstar breached certain common law duties.[25] Excavators like Gemstar have a general duty to avoid damage to underground utilities. *See Level 3 Commc'ns, LLC v. Petrillo Contracting, Inc.*, 902 N.Y.S.2d 113, 116 (N.Y. App. Div. 2010).

While Gemstar does not dispute that it owed JD2 certain duties, Avis and Gemstar dispute the scope of those duties. "The existence and scope of a duty is generally a matter of law for the

---

R. & Regs. tit. 16, § 753-1.2. Gemstar does not dispute that it qualifies as an "excavator" under New York law. (*See* Dkt. 99 at 15-18 (discussing obligations as an excavator under New York law).)

[25] Under New York law, a common-law negligence claim is available even in the face of statutory duties. *City of Albany v. Cent. Locating Serv., Ltd.*, 644 N.Y.S.2d 425, 427 (N.Y. App. Div. 1996) ("Even if plaintiff failed to comply with the applicable regulations, statutes and guidelines, its cause of action for common-law negligence is not barred[.]").

court to decide." *Painchault v. Target Corp.*, No. 09-cv-1831, 2011 WL 4344150, at *2 (E.D.N.Y. Sept. 14, 2011).

First, Avis contends that § 753-3.10's mandate that an excavator take "reasonable precautions" and comply with "reasonable directions or accepted engineering practices" required Gemstar to "request drawings from JD2 or the Port Authority after being provided a design drawing that showed no utilities whatsoever." (Dkt. 98-33 at 28.) Gemstar argues that the scope of the duty under § 753-3.10 is not so broad, asserting that "§ 753-3[.]10(a) addresses an excavator's improper use of excavating equipment within the vicinity of a *properly marked* underground facility, which results in damage to that facility." (Dkt. 99 at 23.) Based upon a plain text reading of the statute, the Court agrees with Gemstar.

As an initial matter, any statutory interpretation that attaches liability to an excavator for underground utility damage, of which it lacked knowledge, would stretch the statute beyond reason and comprehension. Thus, "reasonable precautions" cannot be interpreted as requiring an excavator to be aware of underground utilities that another company failed to identify after marking out, or purporting to mark out, the site.[26] Moreover, the regulation itself suggests that its applicability is conditioned on the facility operator having provided "reasonable directions." Here, it is undisputed that neither JD2 nor the Port Authority *gave* Gemstar "reasonable directions" in the form of design drawings that showed the sewer line that Gemstar eventually struck. Avis also

---

[26] Avis cites to *Level 3 Commc'ns, LLC v. Petrillo Contracting, Inc.* for the proposition that Gemstar was required to independently verify underground utilities. This misreads *Level 3*. In *Level 3*, the court found that an excavator had breached its duty by not contacting the One Call system, which Gemstar did. 73 A.D.3d at 867. The court's discussion that the excavator also had a duty to "verify the precise location, type, size, direction of run, and depth" merely indicates that an excavator must, at a minimum, walk through a site *once* the One Call system performs its mark-out, which is what happened here.

fails to put forward evidence that this regulation required Gemstar to *request* such drawings from JD2 or the Port Authority.[27]

Second, Avis alleges that Gemstar's duty under § 753-3.10(a) to "take all reasonable precautions to prevent contact or damage" required it to heed Geotrack's phone call, if made, informing "Gemstar that a sewer pipe ran through the excavation." (Dkt. 98-33 at 29.) The Court agrees. There can be no dispute about this reading of the statute.

Third, Avis asserts that § 753-3.10(b), which requires "the excavator [to] notify the operator of the facility" "[i]n the event of contact with or damage to an underground facility" obligated Gemstar to contact the Port Authority, One Call, or Geotrack upon encountering an underground, unidentified obstruction. (Dkt. 98-33 at 31-32.) The Court declines to read this duty so broadly. As noted by Gemstar, § 753-3.9 requires an excavator to notify an operator of a facility only upon *discovery* of the utility. N.Y. Comp. Codes R. & Regs. tit. 16, § 753-3.9 ("Where an undesignated or otherwise unknown underground facility is discovered within a work area, the excavator shall report such discovery"). Reading the two provisions together, the Court finds that Gemstar only had a duty to contact the Port Authority, One Call, or Geotrack if it knew that it had struck an underground utility.

Fourth, Avis refers to § 753-3.10(d) as prohibiting Gemstar from backfilling the excavation hole after it had hit an obstruction. Again, this provision falls in the same section as the previous

---

[27] To the extent Avis is arguing that by not verifying "all utilities" in the field, Gemstar violated § 753-3.10 because it did not comply with the Port Authority's "reasonable directions," the Court also denies Avis's motion on this ground. There is a factual dispute as to whether the Port Authority directed Gemstar to verify all utilities at the site. Rather, the evidence reveals that Gemstar believed that its obligation was to "just do a scope of the area," (Saia Tr. 90:21-91:2), which Gemstar subsequently did, (*id.* 174:20-25 ("Q. And how did you review that mark out? [Saia:] Just with the job foreman. We walked around, and there were flags and markings on the ground, and we just kind of reviewed them.").

regulation regulations, which govern "contact and damage to *underground facilities*." Thus, for the same reasons, the Court finds that the duty to not backfill only applies when an excavator is aware that it has hit an underground facility. The same reasoning applies to Avis's argument that Gemstar had a duty under § 753-3.10(c) to not recommence construction the day after hitting the obstruction. This duty only applies if Gemstar knew that it had hit an underground utility.[28]

B.    Breach

Having determined the specific statutory and common law duties owed by Gemstar to Avis, the Court must next decide whether these duties were breached.[29] As an initial matter, Avis argues that it is entitled to summary judgment on its negligence claim against Gemstar because "[a] violation of the excavator's statutory duties constitutes *direct evidence* of negligence on the excavator's part." (Dkt. 98-33 at 26 (emphasis added).) Contrary to Avis's assertion, however, "[t]he violation of a regulation or ordinance . . . does not conclusively establish negligence," and instead "may be treated by a jury as *some evidence* of negligence." *MCI Worldcom Networks Servs., Inc. v. Clearwater Drilling, Inc.*, No. 01-cv-9961, 2002 WL 31444940, at *1 (S.D.N.Y. Nov. 1, 2002) (emphasis added); *Verizon New York, Inc. v. Vill. of Athens*, 840 N.Y.S.2d 484, 486 (N.Y. App. Div. 2007) (same). Accordingly, assuming, *arguendo*, that Gemstar in fact violated

---

[28] Although Plaintiff cites case law suggesting that it is irrelevant that Gemstar did not know that it had made contact with an underground utility – in effect, applying a "should have known" standard – the Court finds such case law unavailing because it does not interpret, or purport to interpret, § 753-3.10. (*See* Dkt. 98-33 at 35-36.) Moreover, Plaintiff fails to cite a single case where the court found § 753-3.10 to situations where an excavator did not know that it had struck an underground utility. (*See id.*) Though there appears to be little case law interpreting § 753-3.10, the Court reads the statute as requiring the excavator to have actual knowledge of contact or damage to the underground utility for a violation to be found.

[29] Because the Court has determined that § 753-3.10(a) did not require Gemstar to "request drawings from JD2 or the Port Authority," the Court does not analyze whether this provision was breached.

various regulations, a fact finder must still determine whether such actions constitute negligence. Here, there remain genuine issues of material fact that a jury must resolve as to whether Gemstar breached its statutory and common law duties owed to Avis.

First, Gemstar has presented evidence to create a triable issue of fact as to whether Gemstar ignored warnings from Geotrack that there was a utility under the excavation side, which, if established, would constitute a breach of its duty under § 753-3.10(a) to "take all reasonable precautions to prevent contact or damage." For example, while Geotrack's Westby testified that he left Gemstar a phone message about the existence of underground utilities at the Avis Project site, (Westby Tr. 29:12-19), other testimony indicates that Geotrack actually gave Gemstar an "all clear" to proceed with construction. (Saia Tr. 128:4-12.)[30] Thus, a jury must weigh the evidence to determine whether Gemstar breached its duty under § 753-3.10(a) by ignoring information communicated to it by Geotrack about underground utilities at the Project site.

Second, because there is evidence that Gemstar's employees may not have known that they had hit an underground utility, there are genuine issues of material fact as to whether Gemstar violated its duties under §§ 753-3.10(b), (c), and (d). For example, there is testimony from which a reasonable juror could conclude that the employees did not know that the obstruction was an unverified utility. (Saia Tr. 225:3-21.) Specifically, according to Saia, Gemstar's Project Manager for the Avis Project, "[t]here was no reason to believe it was [an] unverified [utility], because the mark out had been completed." (*Id.* at 225:17-21.) On the other hand, Trastino, a Gemstar foreman on the Avis Project, stated that he stopped digging on December 15, 2011 because he "felt that there was something unaccounted for underground." (Trastino Tr. 100:3-12.) Again, a jury needs

---

[30] "[Q:] . . . So at the time you spoke to Steve [Westby], do you know whether or not you had been to the side and seen any marking out of the area? [Saia:] Well, he had – the conversation that was had was you're all clear." (Saia Tr. 128:4-12.)

to determine whether Gemstar's employees knew that they had hit an underground utility, yet failed to contact the Port Authority, and instead backfilled the excavation hole and recommenced construction the following day.

Lastly, for the same reasons, the Court finds that there are genuine issues of material fact with respect to whether Gemstar breached its common law duty of care to Avis or JD2. *Cf. Schaub Equip. Rental, Inc. v. Marzec*, 588 N.Y.S.2d 952 (N.Y. App. Div. 1992) (affirming summary judgment decision where defendant failed to even contact a company that would verify the utility lines); *MCI Worldcom Network Servs., Inc. v. Glendale Excavation Corp.*, 224 F. Supp. 2d 875, 880 (D.N.J. 2002) (granting plaintiff's motion for summary judgment on negligence claim under New Jersey law where there were two permanent markers indicating an underground cable at construction site and excavator still proceeded to dig). Avis has not pointed to any additional allegations, aside from those supporting its argument regarding Gemstar's statutory duties, that would lead the Court to a different conclusion with respect to Gemstar's common law duty of care to Avis.

Accordingly, because a reasonable fact finder could find that Gemstar breached its statutory and common law duties, Avis's negligence claim against Gemstar must go to a jury.

C.     Causation

Even if the Court could find, as matter of law, that Gemstar violated its statutory and common law duties, Avis's motion for summary judgment on its negligence claim against Gemstar would still have to be denied because Avis cannot show the absence of disputed facts with respect to proximate cause. Avis alleges that because Gemstar violated certain regulations and backfilled the sinkhole, the damage to the underground utility was worse than it might have been otherwise. (Dkt. 98-33 at 38.) But, whether or not Gemstar's actions were the proximate cause of Avis's injury "are questions best left for a jury to decide." *MCI*, 2002 WL 31444940, at *1 (denying

summary judgment on negligence claim because proximate cause was question for the jury where excavator was accused of negligently damaging underground utility).  If a jury concludes that Gemstar was negligent, it must then determine whether such negligence was the proximate cause of Avis's damages.  This is especially true here where Avis is arguing that both JD2's and Gemstar's actions were the proximate cause of the injury.  This argument, in itself, suggests that a jury might find that there are many intervening or superseding causes that might insulate a specific party from liability.

Accordingly, because there are genuine of issues of material fact with respect to whether Gemstar breached any duty to Avis and, even if Gemstar did, whether such breach was the proximate cause of Avis's injury, Avis's motion for summary judgment on Gemstar's negligence claim is denied.

IV.    JD2's Motion For Summary Judgment Against Gemstar

A.    Contractual Indemnification from Gemstar

JD2 asks this Court for a conditional order of indemnity against Gemstar based on Article II(C) of the Subcontractor Terms and Conditions, entered into by Gemstar and JD2 on September 14, 2009 (the "2009 Subcontract"), which provides:

> To save harmless and indemnify [JD2] against all loss, liability, damages and expense caused by or connected with the work of [Gemstar] hereunder.  It is understood that the intent of this provision is to absolve and protect [JD2] from any and all loss, liability, damage, expense and injury of any kind whatsoever, to all persons, whether employees or otherwise, and to all property caused by or connected with the work of subcontractor hereunder.

(Dkt. 109-53 at 2.)

Gemstar contends that JD2 is not entitled to an order of indemnity at the summary judgment stage because (1) the 2009 Subcontract does not apply to the Project and (2) its indemnity provision is void because JD2 cannot be indemnified for its own negligence, which Article II(C) purportedly

does. (Dkt. 99 at 29-30.) The Court finds that while the 2009 Subcontract applies to the Project, it cannot determine whether JD2 is entitled to contractual indemnification because each party's liability remains to be determined.

First, the Court finds no factual support for Gemstar's argument that the 2009 Subcontract does not apply to the Project. (*Id.* at 24.) Under Paragraph 1 of the 2009 Subcontract, Gemstar "agree[d] to supply all labor, materials, equipment, tools, supervision, insurance and all items of expense necessary to perform 'WORK' as described by [JD2] on various sites to be specified by [JD2] periodically as required by [JD2's] clients." (Dkt. 109-53 at 2.) There is no limiting language in this provision, or elsewhere in the 2009 Subcontract, that suggests that the agreement or the indemnity provision do not apply to the Avis Project, or that the 2009 Subcontract only applies to other sites.

Moreover, Gemstar's argument that the 2009 Subcontract had been cancelled by the time of the Avis Project similarly has no factual support. The 2009 Subcontract provides:

> This contract is to remain in force until canceled by either party in writing. Written notification must be received at either party's respective offices and cancellation shall become effective ten (10) days from the receipt of such cancellation. All other terms and conditions shall remain in full force and effect.

(*Id.* at 4.) Neither party has put forth any evidence of a written cancellation of the 2009 Subcontract. Accordingly, without any evidence to the contrary, the Court finds that the 2009 Subcontract applied to the Avis Project.

Second, Gemstar asserts that even if the indemnification provision applies to the Avis Project, it is void under New York law because it "is well-settled that full indemnification provisions are unenforceable as violative of § 5-322.1 of the General Obligations Law and New York public policy." (Dkt. 99 at 29.) Section 5-322.1 of New York's General Obligations Law ("GOL § 5-322.1") provides:

A covenant, promise, agreement or understanding in, or in connection with or collateral to[,] a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances[,] including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, *caused by or resulting from the negligence of the promisee*, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable; provided that this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued by an admitted insurer. This subdivision shall not preclude a promisee requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of a party other than the promisee, whether or not the promisor is partially negligent.

(Emphasis added.)

At this stage in the litigation, the Court cannot determine whether the 2009 Subcontract indemnity provision is void under GOL § 5-322.1 because the liability of the various parties cannot yet be determined. If a jury were to render a verdict finding JD2 and Gemstar negligent, then it is true that such an indemnification provision could not be used to indemnify JD2 for its own negligence.[31] However, if only Gemstar, and not JD2, is found to be at fault, then GOL § 5-322.1 would not bar JD2 from being indemnified by Gemstar pursuant to the 2009 Subcontract. Because no liability determinations can be made at this time, JD2's summary judgment motion seeking a conditional order of indemnity against Gemstar must be denied. *See, e.g., Cava Const. Co. v. Gealtec Remodeling Corp.*, 871 N.Y.S.2d 654, 656 (N.Y. App. Div. 2009) ("[S]ince there are questions of fact as to whether the plaintiff was free from negligence with regard to the underlying accident, summary judgment on the cause of action for contractual indemnification is not

---

[31] JD2's argument that because the provision only covers damage that is "caused by or connected with the work of" Gemstar, that it does not "provide that JD2 is to be indemnified for JD2's own negligence" strains credulity. (Dkt. 112 at 9-10.)

warranted."); *Komulainen v. Montenay Power Corp.*, No. 03-cv-3279, 2008 WL 919645, at *6 (E.D.N.Y. Mar. 31, 2008) (denying summary judgment on contractual indemnification claims until underlying liability is determined).

B.    Gemstar's Failure to Procure Insurance

JD2 also moves for summary judgment against Gemstar on the ground that Gemstar, in violation of its contractual duties, failed to procure insurance. "A party seeking summary judgment based on an alleged failure to procure insurance naming that party as an additional insured must demonstrate that a contract provision required that such insurance be procured and that the provision was not complied with." *Ginter v. Flushing Terrace, LLC*, 995 N.Y.S.2d 95, 100 (N.Y. App. Div. 2014).

Under the 2009 Subcontract, Gemstar agreed:

To secure and maintain in force during the life of this Agreement, the following types of insurance policies for the specified amounts: (1) public liability and property damage insurance including: Comprehensive, Premises/Operations, Products/Completed Operations, Contractual [C]overage and Underground Explosion and Hazard Coverage in an amount no less than $1,000,000 combined; (2) automobile, bodily injury and property damage liability insurance for not less than $1,000,000 combined; (3) Workman's Compensation (Statutory and Employer's Liability insurance of not less than $1,000,000 per accident).

[Gemstar] shall provide [JD2] with appropriate insurance certificates attesting to the existence of the above coverage prior to commencing work or delivery of material, as described above. [Gemstar] agrees that these required policies will not be cancelled or otherwise allowed to lapse during the term of this Agreement. [Gemstar] will notify [JD2] thirty (30) days before any change or cancellation in insurance.

[Gemstar] shall add [JD2] as an additional insured under [Gemstar's] insurance.

(Dkt. 109-53 at 2.)

Here, there is no dispute that the 2009 Subcontract required Gemstar to name JD2 as an additional insured.[32]   The parties dispute, however, whether Gemstar actually procured such coverage.  To support its position, JD2 relies solely on a declaration submitted with its summary judgment papers, in which David Piercey, JD2's Vice President, claims that Gemstar "failed to procure the necessary insurance naming JD2 as an additional insured for the project."  (Dkt. 109-49 at ¶ 22.)  But Piercey's statement is directly contradicted by JD2's own briefing and the exhibits annexed to its summary judgment motion, establishing that "Gemstar provided JD2 with a Certificate of Insurance which provided that JD2 was named as an additional insured under Gemstar's comprehensive liability insurance policy."   (Dkt. 109-55 at 27; Dkt. 109-54 ("Certificate of Liability Insurance").)[33]   The Court agrees with Gemstar that the Certificate of Insurance is enough to raise a triable issue of fact as to whether Gemstar properly procured insurance.  *Cf. DiBuono v. Abbey, LLC*, 922 N.Y.S.2d 101, 103 (N.Y. App. Div. 2011) (party failed to raise "triable issue of fact, since it did not submit any evidence demonstrating that it procured an insurance policy naming [the other party] as an insured party").  Therefore, Avis's motion for summary judgment based on Gemstar's failure to procure insurance is denied.

C.    Gemstar's Negligence Cross-Claim Against JD2

JD2 further moves for summary judgment on Gemstar's negligence cross-claim.  For the reasons discussed in section IIB, however, that motion is denied.  As previously discussed, there

---

[32] It bears emphasis that although Gemstar disputes the 2009 Subcontract's applicability to Avis's contractual indemnification claim, it does not dispute the applicability of the 2009 Subcontract to Avis's failure to procure insurance claim.

[33] For this and other reasons, the Court has not relied on Piercey's declaration that was submitted in connection with Avis's summary judgment motion.  *See Mack v. United States*, 814 F.2d 120, 125 (2d Cir.1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.")

exist disputed issues of material fact as to whether JD2 breached a duty to ensure that all underground utilities were marked out, or that Gemstar was provided with a properly marked-out design plan, for the Avis Project.  Furthermore, even if JD2 did breach such duty, there would be disputed issues of fact as to whether that breach was the proximate cause of Gemstar's damage.

### D.    Gemstar's Contractual Indemnification Cross-Claim Against JD2

Additionally, JD2 moves for summary judgment on Gemstar's contractual indemnification cross-claim, arguing that the 2009 Subcontract "does not provide for contractual indemnity flowing from JD2 to Gemstar, but just the opposite, it provides for contractual indemnity flowing from Gemstar to JD2." (Dkt. 109-55 at 28.)  The Court agrees.  In the 2009 Subcontract, which JD2 maintains governs Gemstar's contractual indemnification cross-claim, Gemstar agreed "to save harmless and indemnify" JD2, not the other way around.  (Dkt. 109-53 at 2.)  Gemstar presents no evidence in response, which is insufficient at the summary judgment stage.[34] Therefore, JD2's motion for summary judgment dismissing Gemstar's contractual indemnification cross-claim is granted.

### E.    Gemstar's Equitable Indemnification Cross-Claim Against JD2

JD2 seeks summary judgment on Gemstar's equitable indemnification cross-claim. Equitable indemnification "avoids the unfairness of holding one party liable solely on account of the negligence of another."  *LNC Inv., Inc. v. First Fid. Bank, Nat. Ass'n*, 935 F. Supp. 1333, 1352

---

[34] A mere "scintilla of evidence" in support of the nonmoving party will be insufficient; rather, there "must be evidence on which the jury could reasonably find for the [nonmovant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation") (quotations and citations omitted); *see also Miner v. Clinton Cty.*, 541 F.3d 464, 471 (2d Cir. 2008) (nonmoving party must offer "some hard evidence showing that its version of the events is not wholly fanciful").

(S.D.N.Y. 1996). JD2's only argument to support its position is that "Gemstar cannot show that JD2 was negligent." (Dkt. 109-55 at 28). Because the Court has already determined that whether JD2 was negligent is a question of fact for the jury to decide, JD2's motion for summary judgment on Gemstar's equitable indemnification cross-claim is denied.

F.     <u>Gemstar's Breach of Contract Cross-Claim Against JD2</u>

Lastly, JD2 moves for summary judgment on Gemstar's breach of contract cross-claim, arguing that it is "without merit" and moot because any money owed by JD2 to Gemstar "has been paid by JD2." (*Id.* at 28.) JD2's assertion, however, is made without any citation to evidence or the record. "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000) (quotations and citations omitted); *see also 24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 429 F.3d 39, 46 (2d Cir. 2005). Accordingly, because JD2 fails to meet its burden, its motion for summary judgment on Gemstar's breach of contract cross-claim is denied. *See Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (moving party has initial burden of "establishing the absence of any genuine issue of material fact").

V.     <u>The Port Authority's Motion to Dismiss JD2's and Gemstar's Third-Party Claims for Contribution and/or Indemnification</u>

The Port Authority moves to dismiss JD2's and Gemstar's third-party claims against it for contribution and/or indemnification, on the basis that JD2 and Gemstar failed to comply with New York's notice provisions.[35] Prior to commencing a suit against the Port Authority, there are certain "jurisdictional and non-waivable" requirements that must be met. *See In re Sept. 11 Prop. Damage*

---

[35] Although Gemstar filed a notice of claim, it did so less than 60 days before filing its third-party complaint in this action. JD2 has not filed any notice of claim.

*& Bus. Loss Litig.*, No. 02-cv-7188, 2008 WL 2600448, at *1 (S.D.N.Y. June 26, 2008). Under

Section 7101 of the Unconsolidated Laws of New York, "the states of New York and New Jersey

consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise . . .

against the Port of New York Authority. However, this consent is contingent upon the plaintiff

filing a notice of claim "at least sixty days before such suit, action or proceeding is commenced."

N.Y. Unconsol. Law § 7107.[36] New York courts, as well as the Second Circuit, have construed

this requirement strictly. *See Aegis Ins. Servs., Inc. v. The Port Auth. of New York & New Jersey*,

435 F. App'x 18, 26 (2d Cir. 2011) (refusing to excuse a failure to comply with the statute even

though Port Authority suffered no harm); *Giannone v. Port Auth. of New York & New Jersey*, 511

N.Y.S.2d 940, 941 (N.Y. App. Div. 1987) ("Compliance with this condition is mandatory and

jurisdictional and the failure to satisfy this condition results in a withdrawal of consent and compels

the dismissal of the action for lack of subject matter jurisdiction.") Neither JD2 nor Gemstar

provided notice at least sixty days before filing their third-party complaint against the Port

Authority.

Here, the parties dispute whether the notice of claim provision applies to this case because

it is one that is solely for contribution and/or indemnification.[37] Gemstar and JD2's argument that

it does not apply rests heavily on *Hartl-O'Leary v. Green Bus Lines Corp.*, an unreported New

York Supreme Court case where the Court observed that because a cause of action for contribution

---

[36] New York federal courts apply New York State's notice of claim of statute. *See, e.g., Carter v. Port Auth. of New York & New Jersey,* No. 03 CIV. 8751, 2004 WL 2978282, at *4 (S.D.N.Y. Dec. 20, 2004).

[37] The Port Authority appears to have abandoned its argument that JD2 and Gemstar also bring claims sounding in negligence. *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (finding it appropriate for court to "infer from [Plaintiff]'s partial opposition that [the] claims . . . that are not defended have been abandoned", particularly as to counseled parties).

and/or indemnification does not accrue until a third party makes payment, "the notice requirements for the commencement of an action . . . are inapplicable to the maintenance of a third party action." 824 N.Y.S.2d 754 (N.Y. Sup. Ct. 2006). The Port Authority argues that *Hartl-O'Leary* "relied on General Municipal § 50-e," which, according to the Port Authority, is "a critical distinction" because "[u]nder General Municipal Law § 50-e, there is no requirement to serve a notice of claim until the claim actually arises, whereas, under § 7107, the notice of claim must be served before a suit is commenced, regardless of whether the cause of action has technically accrued." (Dkt. 117 at 8.) This distinction has been recognized by at least one other New York State Court. *See W&W Steel v. National September 11 Memorial*, 2013 N.Y. Misc. LEXIS 3919, at *12-15 (N.Y. Sup. Ct. Aug. 27, 2013).

The Court relies on the reasoning in *W&W Steel*, and finds that *Hartl-O'Leary* is inconsistent with the Second Circuit's strict construction of this jurisdictional statute. Whether or not an action has accrued has no bearing on whether a party must file a notice of claim prior to commencing litigation, as Gemstar and JD2 have both done here, even though their claims for contribution and/or indemnification have not "accrued." Accordingly, Gemstar's and JD2's third-party claims against the Port Authority must be dismissed for non-compliance with the requirements of § 7107.[38] Under Federal Rule of Civil Procedure 14, both parties can re-serve

---

[38] Because the Court is dismissing Gemstar's and JD2's third-party claims against the Port Authority, it need not decide the Port Authority's Motion for Summary Judgment against both parties or JD2's Motion for Summary Judgment against the Port Authority. However, for many of the reasons discussed above, the parties are advised that the Court is unlikely to grant a renewed motion for summary judgment after the parties fix the procedural deficiencies.

their summons and Third-Party Complaint against the Port Authority more than sixty (60) days after service of a proper notice of claim.[39]

<em>CONCLUSION</em>

For the reasons stated above, Avis's motion for summary judgment is denied; JD2's motion for summary judgment is granted in part and denied in part; and the Port Authority's motion to dismiss is granted.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 13, 2016
      Brooklyn, New York

---

[39] The Court recognizes that Gemstar filed an untimely notice under § 7107.  Accordingly, while Gemstar may recommence its third-party action, the Port Authority maintains the right to challenge whether that notice is adequate.