UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

AVIS BUDGET CAR RENTAL, LLC,

                Plaintiff,

     - against -

JD2 ENVIRONMENTAL, INC., GEMSTAR
CONSTRUCTION CORPORATION, and
GEOTRACK, INC.,

                Defendants.

-------------------------------------------------------X

JD2 ENVIRONMENTAL, INC.,

                Third-Party Plaintiff,

     - against -

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY and GEOTRACK, INC.,

                Third-Party Defendants.

-------------------------------------------------------X

GEMSTAR CONSTRUCTION
CORPORATION,

                Third-Party Plaintiff,

     - against -

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY and GEOTRACK, INC.,

                Third-Party Defendants.

-------------------------------------------------------X

**<u>Order re: Motions</u> *in Limine***
Case No. 12-cv-5010 (PKC)

PAMELA K. CHEN, United States District Judge:

     In 2011, Plaintiff Avis Budget Car Rental, LLC ("Avis") hired JD2 Environmental, Inc.

("JD2") to install an underground storage tank on property leased by Avis at the John F. Kennedy

International Airport ("JFK").  During excavation, a subcontractor for JD2, Gemstar Construction

Company ("Gemstar"), struck and damaged an underground sewage line running through the Avis

property, causing complaints about a sewage backup from other JFK tenants.  After paying the

costs to repair and remediate the sewage line, Avis filed this action to recover those costs from JD2 and Gemstar based on various theories of negligence, breach of contract, and indemnification. (Dkt. 1.) After responding to Avis's complaint, Gemstar and JD2 each served a third-party complaint on the Port Authority of New York and New Jersey ("Port Authority") and Geotrack, Inc. ("Geotrack"), a company that had been hired by the Port Authority to identify and "mark out" certain underground utilities at JFK. (Dkts. 12, 23.) According to JD2 and Gemstar, either the Port Authority or Geotrack—or both—are responsible for any damages that Avis incurred as a result of the sewage line rupture because those parties failed to accurately identify and mark out the underground sewage line before Gemstar began excavation. (Dkt. 12 ¶¶ 20-27; Dkt. 23 ¶¶ 41-58.)[1] Geotrack, which filed for bankruptcy in 2012, has not appeared in this action, resulting in entries of default against Geotrack in favor of Avis, JD2, and Gemstar.[2]

By order dated March 28, 2016, the Court ruled on motions for summary judgment by Avis and JD2, and on a motion to dismiss by the Port Authority. (Dkt. 119; *see also* Dkt. 126 (Am. Order ("SJ Order")).)[3] Although narrowing the scope of triable issues, that order did not dispose of all claims against any party, and trial in this matter is scheduled to begin on August 14, 2017.

Before the Court are "motions *in limine*" by JD2 and Gemstar seeking a finding that the Port Authority is vicariously liable for the alleged negligence of Geotrack in failing to identify and

---

[1] After JD2 and Gemstar named Geotrack as a third-party defendant, Avis amended its complaint to add Geotrack as a Defendant. (Dkt. 41.) Avis does not assert claims against the Port Authority.

[2] The Court has determined that judgment will not be entered against Geotrack until after liability is determined and fault, if any, is apportioned at trial. *See Lite-Up Corp. v. Sony Music Entm't, Inc.*, 1999 WL 436563, at *2-3 (S.D.N.Y. June 24, 1999) (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)).

[3] The Court also denied as moot motions for summary judgment by JD2 and Gemstar against the Port Authority for the reasons stated in that order. (SJ Order, Dkt. 126, at 38 n.38.)

accurately mark out the sewage pipe that Gemstar struck during excavation. As Avis rightly points out in its opposition brief, these motions, although styled as "motions *in limine*," are in effect motions for summary judgment, filed long after the deadline for such motions, without complying with the ordinary procedures for summary judgment practice. (Avis Opp'n, Dkt. 182, at 1.) Lest there be any doubt, the Court does not condone JD2's decision, revealed for the first time in the parties' joint pre-trial order (Dkt. 158 at 41), to seek a ruling on this central issue so close to the start of trial. Nonetheless, in the interest of clarifying the triable issues before evidence is presented to a jury, the Court is issuing this ruling on JD2's and Gemstar's motions.

For the reasons stated below, the Court holds that New York General Business Law § 763 imposes a nondelegable duty on utility operators—here, the Port Authority—to accurately and with due care designate the location of their underground facilities upon receipt of a notification effective under the one-call notification system established in Article 36 of the New York General Business Law, N.Y. Gen. Bus. Law §§ 760-67. Accordingly, to the extent the Port Authority's contractor, Geotrack, failed to discharge the Port Authority's mark-out duty under § 763, the Port Authority is vicariously liable, as a matter of law, for any damages that proximately resulted from that failure. The Court declines to hold, as a matter of law, that Geotrack's performance of the underground utility mark-out in this case was an "inherently dangerous activity"; thus, to the extent that JD2 and Gemstar intend to pursue that theory of vicarious liability against the Port Authority, they must establish the requisite facts at trial. JD2 and Gemstar will also be permitted to pursue vicarious liability against the Port Authority on the basis of the Port Authority's negligent selection, instruction, or supervision of Geotrack and based on a theory of agency or employment as between the Port Authority and Geotrack.

Finally, in light of these holdings and discussions with counsel in the final pre-trial conference, the Court hereby imposes certain restrictions on the presentation of evidence concerning the Port Authority's vicarious liability in this action. Counsel are permitted to present evidence and argument concerning the Port Authority's alleged negligence in selecting, instructing, and supervising Geotrack in connection with the project at issue in this action; however, the evidence regarding selection will be subject to certain limitations as discussed herein. Counsel are also permitted to present evidence and argument concerning whether Geotrack acted as the Port Authority's agent or employee in connection with the project at issue in this action. Importantly, however, counsel are not permitted to inform the jury of the Court's ruling of vicarious liability under New York General Business Law § 763, nor may they argue to the jury that the Port Authority was prohibited from delegating its duties to Geotrack because of the requirements of § 763. With respect to the information and evidence that is excluded by this order, the Court finds, under Federal Rule of Evidence 403, that the potential for prejudice and confusion substantially outweighs any probative value of such evidence and argument to the jury's determination of the facts and liability in this action.

## BACKGROUND[4]

Starting in or around 2008, Avis began to consider the installation of an underground storage tank (the "Project") on property that Avis leased at JFK Airport, which is owned by the City of New York and operated by the Port Authority. (Avis 56.1, Dkt. 98-1, ¶ 1; Port Authority Answer to Third-Party Compl., Dkt. 135, ¶ 8.)[5] Avis hired Defendant JD2, an engineering

---

[4] The Court assumes the parties' familiarity with the factual background and procedural history of this case. A more detailed summary is set forth in the Court's summary judgment order. (Dkt. 126.)

[5] The Port Authority exercises broad authority over the operation of JFK Airport: It has "all the power and authority to purchase, construct, lease and/or operate terminal transportation

consulting firm, to provide design and oversight services for the Project. (Pre-trial Order, Dkt. 158, at 38; Dkt. 98-23 (Services Agreement) at 3.) JD2 in turn hired a subcontractor, Gemstar, to perform the excavation work on the Project. (Pre-trial Order, Dkt. 158, at 38 ¶ 5.)

On November 28, 2011, Gemstar gave notice of the upcoming excavation to Dig Safely New York ("Dig Safely"), a not-for-profit company that administers a "one-call notification system" for excavation and demolition projects in the State of New York.[6] By statute, Dig Safely was required to transmit the information in Gemstar's excavation notice to "every member [of the one-call notification system] that operates an underground facility in the area of the proposed activity." N.Y. Gen. Bus. Law § 761. In keeping with that obligation, Dig Safely transmitted Gemstar's excavation notice to the Port Authority, as the operator of an unspecified utility located in the vicinity of Gemstar's upcoming excavation. (Port Authority 56.1 Stmt., Dkt. 106 ¶ 138; Dkt. 107-15.) According to the Port Authority, it then had "three days to mark out the utilities" on the site in question. (Danko Dep., Dkt. 107-7, at 44:16-24.)[7] In this instance, the Port Authority contracted that responsibility to Geotrack, Inc., an independent contractor that the Port Authority

_____

and other facilities of commerce includ[ing] the facility it operates at John F. Kennedy International Airport, City of New York, County of Queens, State of New York, and to make charges for the use thereof; and for any such purposes to hold, lease and/or operate real or personal property in connection therewith." (Port Authority 56.1 Stmt., Dkt. 106, ¶ 103.)

[6] The requirements and specifications of a one-call notification system are set forth in Article 36 of the New York General Business Law, N.Y. Gen. Bus. Law §§ 760-67, and implementing regulations promulgated by the Public Service Commission, 22 N.Y.C.R.R. Part 753. Broadly, a "one-call notification system" is "an organization among whose purposes is establishing and carrying out procedures and programs to protect underground facilities from damage due to excavation and demolition including, but not limited to, receiving notices of intent to perform excavation and demolition, and transmitting the notices to one or more of its member operators of underground facilities in the specified area." N.Y. Gen. Bus. Law § 760(8).

[7] (See also Port Authority 56.1 Stmt., Dkt. 106, ¶ 107 (explaining that, "[b]ased on the information provided by a contractor on the One Call notification, utility operators get notified that construction will take place close to the utilities that they operate, which give[s] the operators a chance to mark out their utilities").)

had chosen for such work through a competitive request-for-proposal process. (Port Authority Opp'n, Dkt. 181, at 5.)

On December 15 and 16, 2011, during excavation on the Project, Gemstar struck and damaged an underground sewage line running through the Avis-leased property, causing complaints about a sewage backup from other JFK tenants. (Pre-trial Order, Dkt. 158, at 38 ¶¶ 15-25; SJ Order, Dkt. 126, at 6-7.) According to JD2 and Gemstar, the Port Authority and Geotrack are responsible for any damages flowing from the sewage line rupture because those parties failed to accurately identify and mark out the sewage line before Gemstar began excavation. (Dkt. 12 ¶¶ 20-27; Dkt. 23 ¶¶ 41-58.) Avis and the Port Authority give a contrary explanation for the sewage line damage, pinning the blame in part on negligence by JD2 and Gemstar. (*See* SJ Order, Dkt. 126, at 7-39.) As the Court explained in its summary judgment order, there are genuine issues of material fact that preclude the Court from resolving the parties' disputes over liability. (*See* SJ Order, Dkt. 126.) Those genuine issues of fact will be resolved by a jury in the upcoming trial.

In advance of trial, however, JD2 and Gemstar have moved for a finding that the Port Authority is vicariously liable for the alleged negligence of Geotrack in failing to identify and accurately mark out the sewage pipe that Gemstar struck during excavation. As Avis rightly points out in its opposition brief, these motions, although styled as "motions *in limine*," are in effect motions for partial summary judgment. (Avis Opp'n, Dkt. 182, at 1.)

## LEGAL STANDARD

Summary judgment is proper where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012). In determining whether there are genuine disputes of material fact,

the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quotation omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## DISCUSSION

"The general rule" in New York is that "a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts." *Kleeman v. Rheingold*, 81 N.Y.2d 270, 273 (1993); *see also Bros. v. N.Y.S. Elec. & Gas Corp.*, 11 N.Y.3d 251, 257-58 (2008). New York courts have also recognized numerous exceptions to the general rule, however, "most of which are derived from various public policy concerns." *Kleeman*, 81 N.Y.2d at 274. "These exceptions . . . fall roughly into three basic categories: negligence of the employer in selecting, instructing, or supervising the contractor; employment for work that is especially or 'inherently' dangerous; and, finally, instances in which the employer is under a specific nondelegable duty." *Kleeman*, 81 N.Y.2d at 274 (internal citations omitted). And, of course, a party may also be held liable for the negligence of a contractor under the doctrine of *respondeat superior*, if, due to the "degree of control exercised by the purported employer," the contractor is deemed to be the party's employee. *McCann v. Varrick Grp., LLC*, 84 A.D.3d 591, 591 (N.Y. App. Div. 2011) (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003)).

In their motions *in limine*, JD2 and Gemstar argue that every one of these exceptions applies to the Port Authority in this case. The Court addresses each exception in turn.

## I.     Negligent Selection, Instruction, and Supervision

A party may be liable for the negligence of an independent contractor when the party itself was negligent in the selection, instruction, or supervision of the contractor.  *See Kleeman*, 81 N.Y.2d at 273.  As the New York Court of Appeals has observed, "this category may not be a true exception to the general rule [against vicarious liability], since it concerns the employer's liability for its own acts or omissions rather than its vicarious liability for the acts and omissions of the contractor."  *Id.* at 273 n.1.  To establish that the Port Authority was negligent in its selection, instruction, or supervision of Geotrack, JD2 and Gemstar would need to establish each of the elements of negligence, including breach and proximate cause, for the particular theory of negligence they are pursuing.  *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).  Having reviewed the parties' submissions, the Court easily finds that genuine issues of material fact exist as to whether the Port Authority was negligent in its hiring, instructing, and supervising Geotrack.  (*See* Gemstar Br., Dkt. 171, at 7; Port Authority Opp'n, Dkt. 181, at 4-6; Avis Opp'n, Dkt. 182 at 12-16.)  Should JD2 and Gemstar wish to pursue this theory of liability against the Port Authority, they will need to present it to the jury.

With regard to the Port Authority's alleged negligent selection of Geotrack, as the Court previously ruled at the final pre-trial conference, no post-incident evidence regarding Geotrack's deficient performance or the Port Authority's knowledge thereof may be elicited or introduced at trial.  Furthermore, any pre-incident evidence regarding Geotrack's deficient performance before it was selected by the Port Authority for the Project is limited to the Port Authority's *knowledge*

of such deficient performance, and, if any Port Authority witness denies such knowledge, JD2 and Gemstar will not be permitted to introduce evidence to establish the deficient performance.[8]

## II. Inherently Dangerous Activity

New York "has long recognized" that a party is vicariously liable for the negligence of an independent contractor where "the activity involved is 'dangerous in spite of all reasonable care.'" *Chainani v. Bd. of Educ. of N.Y.C.*, 87 N.Y.2d 370, 381 (1995) (quoting Prosser & Keeton, Torts § 71 (5th ed. 1984)). "This exception applies when it appears both that 'the work involves a risk of harm inherent in the nature of the work itself [and] that the employer recognizes, or should recognize, that risk in advance of the contract.'" *Id.* (quoting *Rosenberg v. Equitable Life Assur. Socy.*, 79 N.Y.2d 663, 669 (1992)).[9] In some cases, the question whether work is "inherently dangerous" can be decided by a court as a matter of law. *See, e.g.*, *Klein v. Beta I LLC*, 10 A.D.3d 509, 509 (2004); *Rosenberg*, 79 N.Y.2d at 670. In most cases, however, "[w]hether the work is inherently dangerous is . . . a question of fact to be determined by the jury." *Rosenberg*, 79 N.Y.2d at 670.

The Court takes guidance from New York cases finding various kinds of activities "inherently dangerous" or not "inherently dangerous," with several decisions standing out as particularly relevant. In *Rosenberg v. Equitable Life Assurance Society*, the Court of Appeals stated:

> [In their treatise,] Prosser and Keeton illustrate the [inherently dangerous activity] exception with two illustrations. First, they consider the employment of a trucker to haul goods. If the trucker drives at excessive speed, he presents a danger to others, but the danger is not one that is inherent in the nature of the contract work and there is no vicarious liability

---

[8] To the extent the Court orally ruled at the final pre-trial conference that no evidence of Geotrack's pre-incident deficient performance would be admitted, this Order supersedes that oral ruling.

[9] *See also Rosenberg*, 79 N.Y.2d at 669 ("[B]efore the exception applies, it must appear not only that the work involves a risk of harm inherent in the nature of the work itself, but also that the employer recognizes, or should recognize, that risk in advance of the contract.").

> on the part of the employer for the trucker's negligence. If an owner hires an independent contractor to excavate an area next to a thoroughfare, however, the work obviously presents inherent dangers to those who must use the thoroughfare.

79 N.Y.2d 663, 669 (1992) (citing Prosser & Keeton, Torts § 71 (5th ed. 1984)).

Other decisions by New York courts demonstrate that the "inherent danger" of an activity depends both on the nature of the activity and the setting in which the activity is performed. *Compare, e.g.*, *Steel v. City of N.Y.*, 271 A.D.2d 435, 435-36 (N.Y. App. Div. 2000) (holding that a cable company's "laying of underground cable" under a street in Queens, New York, "is not 'inherently dangerous' work"), *Marvin Briggs, Inc. v. N.Y. Pub. Library*, 260 A.D. 218, 220 (N.Y. App. Div. 1940) (holding that "the removal of a heavy boiler, through the instrumentality of [a] crane, from [a] truck to [a New York City] sidewalk . . . was not inherently dangerous"), *and Rodriguez v. C.F. Lex Assocs.*, 235 A.D.2d 354, 354 (N.Y. App. Div. 1997) (holding that, absent unusual circumstances, "[w]ashing a sidewalk . . . is not inherently dangerous work such as might render a building owner liable for the negligence of an independent contractor"), *with Tytell v. Battery Beer Distrib., Inc.*, 202 A.D.2d 226, 226-27 (N.Y. App. Div. 1994) (holding that "[t]he construction of a sidewalk bridge [in the Bronx] extending over an area frequented by pedestrians" was an inherently dangerous activity), *Wright v. Tudor City Twelfth Unit*, 276 N.Y. 303, 307-08 (1938) (finding genuine issues of fact as to whether "placing mats on [the] sidewalk[] [on 42nd Street in midtown Manhattan] and cleaning them with soap and water" was an inherently dangerous activity), *Christie v. Ranieri & Sons*, 194 A.D.2d 453, 454-55 (N.Y. App. Div. 1993) (finding genuine issues of fact as to whether "the demolition and removal of two existing garages" on a residential property in the Bronx was inherently dangerous activity), *and Hanley v. Cent. Sav. Bank*, 255 A.D. 542, 543 (N.Y. App. Div. 1938) (observing that "[d]emolition of a building in a crowded section of a City should be considered as inherently dangerous").

Here, JD2 argues that "marking out underground facilities (potentially fuel lines, electrical cables/conduits, etc.) at the construction site of a fuel pump station at an airport . . . involve[s] danger, not just to the person performing the mark out, but to the general public as a whole." (JD2 Br., Dkt. 174, at ECF 11.)[10] According to JD2, "[t]he dangers are numerous: gasoline, excavation, electricity, propane, and other utilities, in close proximity to the Van Wyck Expressway and at an airport frequented by untold thousands of people per day, every day . . . ." (*Id.*) Similarly, Gemstar argues that "Geotrack was engaging in an inherently dangerous activity when it performed the mark-out because of the risk of injury involved." (Gemstar Br., Dkt. 171, at 6.)

The Court holds that JD2 and Gemstar have failed to establish, as a matter of law, that Geotrack's work on the Project was "inherently dangerous." The Court finds that additional facts, which are not clearly established in the record, could influence a factfinder's assessment of the "inherent danger" of Geotrack's duties on the Project. For example, the record does not establish the proximity of the excavation site to a public road or an airport terminal, or otherwise indicate the number or type of people who may have been in the vicinity of the site during excavation. The record also does not establish whether, at the time the Port Authority delegated its mark-out duties to Geotrack, the Port Authority knew what types of utilities Geotrack may have been responsible for marking out. If the facts at trial show, for example, that Geotrack was expected to mark out the location of only a single sewage line—and not, for example, a high-voltage electrical line or a gas line, as JD2 and Gemstar posit in their hypothetical parade of horribles (Gemstar Reply Br., Dkt. 189, at 8; JD2 Br., Dkt. 174, at ECF 11)—then the danger inherent in Geotrack's duties would be less severe than Gemstar and JD2 make it out to be. Other facts presented at trial may similarly affect the fact-intensive inquiry of whether Geotrack was engaged in an "inherently dangerous"

---

[10] Citations to "ECF" refer to the pagination applied by the Court's CM/ECF system.

activity in the particular circumstances of this case. Accordingly, the Court declines to find the Port Authority vicariously liable, as a matter of law, for Geotrack's negligent acts based on the allegedly "inherent danger" of Geotrack's activities. That "question of fact [must] be determined by the jury." *Rosenberg*, 79 N.Y.2d at 670.

### III.  Nondelegable Duty Imposed by Statute

New York courts, including the Court of Appeals, "ha[ve] repeatedly held that statutes and regulations that address specific types of safety hazards create nondelegable duties of care." *USAA Cas. Ins. Co. v. Permanent Mission of Rep. of Namibia*, 681 F.3d 103, 110 (2d Cir. 2012) (citing *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 499-500 (1993) (holding that New York Labor Law § 240(1) imposes a nondelegable duty on property owners and contractors)).[11] A statute or regulation "generally create[s] a nondelegable duty where it contains a 'specific positive command,' but not where it merely incorporates 'the ordinary tort duty of care,' using terms like 'adequate,' 'effective,' or 'suitable.'" *Id.* (quoting *Morris v. Pavarini Constr.*, 9 N.Y.3d 47, 50 (2007)).

Several decisions by the New York Court of Appeals and the Second Circuit illustrate the difference between a statute that imposes a "specific positive command" and one that "merely incorporates the ordinary tort duty of care." The most instructive for purposes of this case is *Ross v. Curtis-Palmer Hydro-Electric Co.*, in which the Court of Appeals determined whether certain provisions of the New York Labor law created nondelegable duties on property owners that cannot

---

[11] *See also, e.g.*, *Misicki v. Caradonna*, 12 N.Y.3d 511, 520-21 (2009) (holding that New York regulation governing the use of power equipment, 12 N.Y.C.R.R. 23-9.2(a), imposes a nondelegable duty on property owners to "correct[] by necessary repairs" any power-operated equipment on their premises "[u]pon . . . discovery [of] any structural defect or unsafe condition in such equipment"); *St. Louis v. Town of N. Elba*, 16 N.Y.3d 411, 413-15 (2011) (holding that New York regulation governing the safe use of power shovels and backhoes, 12 N.Y.C.R.R. 23-9.4(e), imposes a nondelegable duty on property owners to ensure certain safeguards are in place).

be delegated to contractors whose employees work on the property owners' land. With respect to Labor Law § 200(1), which establishes a general requirement that "all places to which [the Labor Law] applies shall be constructed . . . [and] operated . . . so as to provide reasonable and adequate protection . . . to all persons employed therein," the *Ross* court held that Section 200(1) merely "codifies landowners' and general contractors' common-law duty to maintain a safe workplace." 81 N.Y.2d at 505.[12] By contrast, the *Ross* court reaffirmed that Labor Law § 240(1), in mandating that "[a]ll contractors and owners . . . who contract for . . . the erection, demolition, repairing, altering, painting, cleaning, or pointing of a building . . . shall furnish or erect, or cause to be furnished or erected . . . scaffolding, hoists, stays, . . . and other devices which shall be so constructed, placed and operated as to give proper protection to [construction workers on the premises]," imposes a specific, nondelegable duty. *Ross*, 81 N.Y.2d at 500.[13]

---

[12] The full text of Section 200(1) states:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section.

N.Y. Labor Law § 200(1).

[13] The full text of Section 240(1) states:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.
>
> No liability pursuant to this subdivision for the failure to provide protection to a person so employed shall be imposed on professional engineers as provided for in article one hundred forty-five of the education law,

The Court also takes guidance from *Misicki v. Caradonna*, 12 N.Y.3d 511 (2009), in which the Court of Appeals considered whether a provision of the New York Industrial Code created nondelegable duties. The *Misicki* court examined 12 N.Y.C.R.R. § 23-9.2(a), which provides in relevant part:

> All power-operated equipment shall be maintained in good repair and in proper operating condition at all times. Sufficient inspections of adequate frequency shall be made of such equipment to insure such maintenance. Upon discovery, any structural defect or unsafe condition in such equipment shall be corrected by necessary repairs or replacement.

12 N.Y.3d at 519-21. In determining whether this provision created a nondelegable duty, the *Misicki* court broke the provision down into three sentences, and examined each one separately. With respect to the first two sentences, the court held that § 23-9.2(a)'s general requirements to keep power-operated equipment "in good repair and in proper operating condition," and the requirement to make "[s]ufficient inspections" to insure proper maintenance, are "not specific enough" to create nondelegable duties. *Misicki*, 12 N.Y.3d at 520-21. With respect to the third sentence, however, the *Misicki* court reached the opposite conclusion, holding that "[t]his portion of the regulation imposes an affirmative duty on employers to 'correct[] by necessary repairs or replacement' 'any structural defect or unsafe condition' in equipment or machinery '[u]pon discovery' or actual notice of the structural defect or unsafe condition." *Id.* at 521. The *Misicki* court explained that the third sentence of § 23-9.2(a) "mandates a distinct standard of conduct,

---

architects as provided for in article one hundred forty-seven of such law or landscape architects as provided for in article one hundred forty-eight of such law who do not direct or control the work for activities other than planning and design. This exception shall not diminish or extinguish any liability of professional engineers or architects or landscape architects arising under the common law or any other provision of law.

N.Y. Labor Law § 240.

rather than a general reiteration of common-law principles, and is precisely the type of 'concrete specification' that *Ross* requires" to find a nondelegable duty. *Id.* (citing *Ross*, 81 N.Y.2d at 499-500).

In this case, Gemstar and JD2 contend that New York General Business Law § 763 ("Duties of operators") imposed a nondelegable duty on the Port Authority, upon receipt of a one-call notification, to identify and mark out the location of the sewage pipe that was struck in this case. (*See* Gemstar Br., Dkt. 171, at 3.) Section 763 provides:

1. Every operator shall participate in a one-call notification system.

2. Upon receipt of the notification provided for by this article either directly from the excavator or from the one-call notification system and pursuant to the rules and regulations adopted by the public service commission pursuant to section one hundred nineteen-b of the public service law, an operator shall advise the excavator in a timely manner of those of its underground facilities that will be affected by the proposed excavation or demolition.

3. The operator shall accurately and with due care designate within a reasonable period of time the location of its underground facilities in the manner and during the time period set forth in the rules and regulations adopted by the public service commission pursuant to section one hundred nineteen-b of the public service law.

N.Y. Gen. Bus. Law § 763.

Gemstar and JD2 argue that Section 763 imposes a positive, nondelegable duty on the "operator" of an underground facility to "'accurately and with due care' mark the location of its utility." (Gemstar Br., Dkt. 171, at 3.) In opposition, the Port Authority argues that Section 763(3), by incorporating the ordinary standard of "due care," is "not specific enough to impose a nondelegable duty upon the Port Authority because it lacks any highly specific or precise

commands that imposes any additional duty other than the standard of care applicable to claims of negligence." (Port Authority Opp'n, Dkt. 181, at 11.)[14]

The Court finds that New York General Business Law § 763 imposes a nondelegable duty on the "operator" of an underground facility to "designate the location of its facility" "accurately and with due care" "[u]pon receipt of [a one-call] notification," in the timeframe and manner described more specifically in "the rules and regulations adopted by the public service commission pursuant to [New York Public Service Law § 119-b]." N.Y. Gen. Bus. Law §§ 763(2)-(3). Relying on guidance primarily from the Court of Appeals' decisions in *Ross* and *Misicki*, the Court finds that Sections 763(2) and 763(3) together give "concrete specification" that a specific person (an "operator") in response to a specific event ("receipt of [a one-call] notification") is commanded ("shall") to perform a specific duty ("designate . . . the location of its underground facilities"). *See also USAA Cas. Ins. Co. v. Permanent Mission of Rep. of Namibia*, 681 F.3d 103, 110-11 (2d Cir. 2012) (finding that regulation of the New York City Building Code creates a nondelegable duty where it creates a "duty to, under specific circumstances, perform a specific task"). Section 763(3)'s further mandate that an operator must obey this command "with due care" merely qualifies the specific command to which it applies—it does not eliminate the command, nor does

---

[14] The Port Authority also argues that Section 763 cannot impose a nondelegable duty because it "does not address a specific type of safety concern." (Port Authority Opp'n, Dkt. 181, at 11.) The Court disagrees. The clearly discernable purpose of Section 763, confirmed by the legislative history of the Underground Facilities Law, is to protect underground facilities from destruction or damage and address the safety risks that underground facilities pose to workers and others in the vicinity of underground work, such as excavation, in proximity to an underground facility. *See Javino v. N.Y. State Dep't of Envtl. Conserv.*, 2013 WL 1946211, at *7 (E.D.N.Y. May 10, 2013); Laws of 1974 of the State of New York, ch. 818, § 1 (preamble to the Underground Facilities Law) ("The legislature hereby finds and declares that there is a need to protect underground facilities from destruction or damage, in order to prevent death or injury to workers and the public, damage to private and public property or loss of essential services to the general public . . . .").

it convert the command into a generally applicable standard of care, as the Port Authority argues. Indeed, similar qualifying language appears in statutes and regulations that New York courts have found to create a nondelegable duty. *See, e.g.*, *Ross*, 81 N.Y.2d at 499 (holding that Labor Law § 240(1) imposes a nondelegable duty to provide certain safety devices "as to give *proper protection*" to affected workers (emphasis added)); *Misicki*, 12 N.Y.3d at 520-21 (holding that 12 N.Y.C.R.R. § 23-9.2(a) imposes a nondelegable duty to make "*necessary* repairs or replacement" upon discovery of any unsafe condition (emphasis added)); *Padilla v. Frances Schervier Hous. Dev. Fund Corp.*, 303 A.D.2d 194, 196-97 (N.Y. App. Div. 2003) (holding that 12 N.Y.C.R.R. 23-9(2)(g) imposes a nondelegable duty, despite using the qualifying term "equivalent," where "th[e] section, *as a whole*, 'mandat[es] compliance with concrete specifications'" (emphasis in original) (quoting *Ross*, 81 N.Y.2d at 505)).[15]

There is one issue, however, that gives the Court some pause. In its surreply, the Port Authority argued that "the Port Authority does not qualify as an operator" because it does not meet

---

[15] Avis and the Port Authority contend that a contrary holding is dictated by the decisions in *Concord Village Owners, Inc. v. Trinity Communications Corp.*, 61 A.D.3d 410 (N.Y. App. Div. 2009), and *Brothers v. N.Y. State Electric and Gas Corp.*, 11 N.Y.3d 251 (2008). (*See* Avis Br., Dkt. 182, at 6; Avis Surreply Br., Dkt. 190, at 3-4; Port Authority Opp'n, Dkt. 181, at 11-12.) The Court finds both of those cases inapplicable. In *Trinity*, the Appellate Division considered whether a company seeking to install an underground utility was liable for the negligent acts of an independent contractor it hired to perform the installation; it did not consider whether the "operator" of the underground utility damaged in that case (a gas pipe) could delegate its mark-out responsibilities to an independent contractor. 61 A.D.3d at 410-11. In *Brothers*, the Court of Appeals considered whether a utility company undertook a nondelegable duty to comply with federal and state safety regulations by obtaining a construction permit from the State that required compliance with specified safety statutes. 11 N.Y.3d at 254-60. The *Brothers* court answered that question by considering the policy implications of finding a nondelegable duty based on the utility company's receipt of a work permit from the State, not by examining the language of the statutes and regulations that were allegedly violated in that case, *see* 11 N.Y.3d at 259-60, the latter of which guides the Court's decision here, *see supra*. As such, neither *Trinity* nor *Brothers* directly or impliedly answered the question that drives the Court's decision in this case—namely, whether the mark-out duties imposed on operators by New York General Business Law § 763 are delegable to a subcontractor.

the applicable statutory definition.[16]  (Port Authority Surreply Br., Dkt. 191, at 3.)  This argument is central to the issue of vicarious liability, of course, because New York General Business Law § 763 applies specifically and solely to "operators."  N.Y. Gen. Bus. Law § 763(1)-(3).  Throughout their submissions in connection with the pending motions *in limine*, the parties all seemed to assume that the Port Authority was the "operator" of the sewage line that Gemstar struck during the excavation at JFK.  (Gemstar Br., Dkt. 171, at 3; Port Authority Opp'n, Dkt. 181, at 9-12; Avis Br., Dkt. 182, at 9; JD2 Br., Dkt. 188, at ECF 6.)  Indeed, the Port Authority itself seemed to concede, in its opposition brief, that it was the "operator" of the sewage pipe in question.  (*See generally* Port Authority Opp'n, Dkt. 181 (appearing to concede that N.Y. Gen. Bus. Law § 763 applies to the Port Authority in this action, but arguing that the language of § 763 does not impose a "specific positive command" giving rise to a nondelegable duty).)

Given the Port Authority's belated argument that it did not qualify as an operator under § 763—raised for the first time in its surreply—the Court examined the summary judgment record to determine whether the Port Authority's status as an "operator" was established there.  Upon that review, the Court finds that the summary judgment record appears to establish, as a matter of law, that the Port Authority was the "operator" of the sewage line in question.[17]  Accordingly, the Court

---

[16] An "operator" is "a person who operates an underground facility or facilities to furnish any of the following services or materials: electricity, gases, steam, liquid petroleum products, telephone or telegraph communications, cable television, sewage removal, traffic control systems, or water."  N.Y. Gen. Bus. Law § 760(6).

[17] For example, the Port Authority did not dispute JD2's assertion that "[t]he Port Authority is one of the utility owners or operators that the One Call system notifies when an excavator is performing work on Port Authority property."  (JD2 56.1 Stmt., Dkt. 109-1, ¶ 63; Port Authority 56.1 Stmt., Dkt. 106, ¶ 63.)  The Port Authority also did not dispute that the one-call ticket created for Gemstar's November 28, 2011 call to Dig Safely indicated that the Port Authority was one of the "member companies [that] were contacted to perform mark outs" in response to the one-call notification.  (JD2 56.1 Stmt., Dkt. 109-1, ¶¶ 64-65; Port Authority 56.1 Stmt., Dkt. 106, ¶¶ 64-65; *see also* Dkt. 107-15 (November 28, 2011 one-call ticket).)  The Port Authority further conceded that it instructed Geotrack to perform a mark-out of the underground facilities located

declines to deny JD2's and Gemstar's motions on this ground, but, in light of the last-minute nature of JD2's and Gemstar's motions *in limine*, the Court invites the Port Authority, if it has a good faith basis on which to do so, to submit a motion for reconsideration of this order to the extent it rests on the finding that the Port Authority is an "operator" within the meaning of § 763. If the Port Authority intends to submit such a motion, it must do so by the end of the day on Monday, August 14, 2017.

For the reasons stated above, the Court holds that New York General Business Law § 763 imposes a nondelegable duty on utility operators—here, the Port Authority—to accurately and with due care designate the location of their underground facilities upon receipt of a one-call notification within the meaning of § 763(2).

### IV. *Respondeat Superior*

A party may be held liable for the negligence of a contractor under the doctrine of *respondeat superior*, if, due to the "degree of control exercised by the purported employer," the contractor is deemed to be the party's employee as a matter of law. *McCann v. Varrick Grp., LLC*, 84 A.D.3d 591, 591 (N.Y. App. Div. 2011) (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003)). To make this determination, the factfinder must consider "[a]ll aspects of the arrangement . . . to determine whether the degree of control and direction reserved to the [purported] employer establishes an employment relationship." *In re Villa Maria Institute of Music (Ross)*, 54 N.Y.2d 691, 692 (1981). Having reviewed the parties' submissions in connection with the present motions *in limine*, the Court easily finds that JD2 and Gemstar have failed to establish, as a matter of law, that Geotrack was an "employee" of the Port Authority. The Port

---

on the site that was the subject of the November 28, 2011 one-call notification. (JD2 56.1 Stmt., Dkt. 109-1, ¶¶ 68-69; Port Authority 56.1 Stmt., Dkt. 106, ¶¶ 68-69; *see also* Port Authority 56.1 Stmt., Dkt. 106, ¶¶ 117, 138-39.)

Authority's ample evidence of the organizational and operational separateness between the Port Authority and Geotrack (Port Authority Opp'n, Dkt. 181, at 6-9) is more than sufficient to create a genuine issue of material fact on this question. As the Court ruled at the final pre-trial conference, to the extent JD2 and Gemstar wish to further pursue this theory, they must do so at trial.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part JD2's and Gemstar's motions *in limine*. As explained in this Order, the Court holds that New York General Business Law § 763 imposes a nondelegable duty on utility operators—here, the Port Authority—to accurately and with due care designate the location of their underground facilities upon receipt of a notification effective under the one-call notification system established in Article 36 of the New York General Business Law, N.Y. Gen. Bus. Law §§ 760-67. Accordingly, to the extent the Port Authority's contractor, Geotrack, failed to discharge the Port Authority's mark-out duty under Section 763, the Port Authority is vicariously liable for any damages that proximately resulted from that failure.

The Court declines to hold that Geotrack's performance of the underground utility mark-out in this case was an "inherently dangerous activity," and therefore denies JD2's and Gemstar's motions to hold the Port Authority vicariously liable, as a matter of law, for the negligence of Geotrack on that basis. Rather, JD2 and Gemstar will have to prove the requisite facts to establish that Geotrack's assigned activity was "inherently dangerous" and that the Port Authority should be held vicariously liable for Geotrack's negligence, if proved, on that basis. JD2 and Gemstar will also be permitted, if they choose, to introduce evidence to support a claim of vicarious liability based on the Port Authority's negligent selection, instruction, or supervision of Gemstar, or based on a theory of agency or employment.

Finally, the Court admonishes counsel to adhere strictly to the limitations this Court has placed on the presentation of evidence and argument to the jury related to the Port Authority's vicarious liability in this action. Most importantly, counsel are not permitted to inform the jury of the Court's ruling on vicarious liability under New York General Business Law § 763, nor may they argue to the jury that the Port Authority was prohibited from delegating its duties to Geotrack because of the requirements of § 763. In addition, the only evidence that will be permitted with respect to the Port Authority's alleged negligent selection of Geotrack will be pre-incident evidence relating to the Port Authority's knowledge of Geotrack's past deficient performance.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 11, 2017
Brooklyn, New York