UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AVIS BUDGET CAR RENTAL, INC.,

                      Plaintiff,

          - against –

JD2 ENVIRONMENTAL, INC., GEMSTAR
CONSTRUCTION CORP., and GEOTRACK, INC.,

                      Defendants.
-----------------------------------------------------------------x
JD2 ENVIRONMENTAL, INC., and GEMSTAR
CONSTRUCTION CORP.,

                      Plaintiffs,

          - against –

PORT AUTHORITY OF NEW YORK
AND NEW JERSEY and GEOTRACK, INC.,

                      Third-Party Defendants.
-----------------------------------------------------------------x

**<u>ORDER</u>**
12-CV-5010 (PKC)(ST)

PAMELA K. CHEN, United States District Judge:

        Plaintiff Avis Budget Car Rental, LLC ("Avis") hired JD2 Environmental, Inc. ("JD2") to install an underground storage tank (the "Project") on property leased by Avis at the John F. Kennedy International Airport ("JFK"). During excavation, a subcontractor for JD2, Gemstar Construction Company ("Gemstar"), struck and damaged an underground sewage line running through the Avis property, causing complaints about a sewage backup from other JFK tenants. After paying the costs to repair and remediate the sewage line, Avis filed this action to recover those costs from JD2 and Gemstar based on various theories of negligence, breach of contract, and indemnification. (Dkt. 1.) Gemstar and JD2 each served a third-party complaint on the Port Authority of New York and New Jersey ("Port Authority") and Geotrack, Inc. ("Geotrack"), a

company that had been hired by the Port Authority to identify and "mark out" certain underground utilities at JFK. (Dkts. 12, 23.) According to JD2 and Gemstar, either the Port Authority or Geotrack—or both—were responsible for any damages that Avis incurred as a result of the sewage line rupture because those parties failed to accurately identify and mark out the underground sewage line before Gemstar began excavation. (Dkt. 12 ¶¶ 20-27; Dkt. 23 ¶¶ 41-58.)[1] Geotrack, which filed for bankruptcy in 2012, has not appeared in this action, resulting in entries of default against Geotrack in favor of Avis, JD2, and Gemstar.

After a two-week trial, a jury returned a verdict finding JD2 and Geotrack liable to Avis for $1,392,646.93 based on Avis's claims against JD2 for breach of warranty and negligence, and Avis's claim against Geotrack for negligence. (Dkt. 222 (Verdict Sheet).) The jury apportioned 65% of the fault to JD2 and 35% of the fault to Geotrack. (*Id.*) The following post-trial motions are now before the Court: (i) Avis's motion to amend the judgment (Dkt. 225); (ii) Avis's motion for attorney's fees and costs (Dkt. 229); (iii) JD2's motion for judgment as a matter of law against Gemstar for contractual indemnity (Dkt. 239); (iv) JD2's and Gemstar's motions for judgment notwithstanding the verdict as to the Port Authority's vicarious liability for Geotrack's negligence (Dkt. 240, 244).

## I.     Avis's Motion to Amend the Judgment

On August 30, 2017, the Clerk of Court entered a judgment based on the jury's verdict. (Dkt. 224 (Judgment on Verdict).) The judgment stated that Avis was entitled to compensatory damages in amount of $1,392,646.93, with JD2 responsible for 65% and Geotrack responsible for

---

[1] After JD2 and Gemstar named Geotrack as a third-party defendant, Avis amended its complaint to add Geotrack as a Defendant. (Dkt. 41.) Avis does not assert claims against the Port Authority.

35% of those damages.  (*Id.*)  In its motion, Avis asks the Court to amend the judgment in order to

(i) clarify that JD2 is jointly and severally liable for the entire amount of compensatory damages

awarded by the jury, and (ii) order the payment of an appropriate amount of pre-judgment and

post-judgment interest.  (Dkt. 225.)

### A.  Joint and Several Liability

Under New York law, "a joint tortfeasor [may] be held liable for the entire judgment,

regardless of its share of culpability."  *Rangolan v. Cty. of Nassau*, 96 N.Y.2d 42, 46 (2001).  The

only exception to joint and several liability in New York is contained in Article 16 of the NY Civil

Practice Law and Rules.  NY CPLR §§ 1601 *et seq.*  Article 16 only applies "in an action or claim

for personal injury" in which a defendant is apportioned less than 50% of the total fault relating to

"non-economic loss."  NY CPLR § 1601.  Here, Avis seeks to recover damages for injury to

property.  Accordingly, the exception to joint and several liability under New York law does not

apply, and JD2 and Geotrack are jointly and severally liable for the entire amount of Avis's

damages.[2]  Indeed, JD2 concedes that it is jointly and severally liable for the entire judgment.

(Dkt. 225 at 3-4.)  The Amended Judgment reflects JD2's and Geotrack's joint and several liability

for the entire judgment amount of $1,392,646.93, including JD2's right of contribution from

Geotrack in the event JD2 satisfies the judgment beyond its proportionate share of total fault.  *See*

*Nicholas v. Consol. Edison Co. of N.Y.*, 100 A.D.2d 957, 958 (N.Y. App. Div. 1984).

---

[2] Moreover, the jury apportioned 65% fault to JD2.  Thus, even if New York's exception
to joint and several liability extended to property damage, JD2 would nonetheless be jointly and
severally liable for all of Avis's damages in this case.  Similarly, as JD2 concedes, JD2 would be
jointly and severally liable for the entire judgment under New Jersey law as well, because JD2's
portion of fault exceeds the 60% threshold for joint and several liability under the applicable New
Jersey statute.  (*See* Dkt. 225 at 3-4 (citing N.J. Stat. § 2A:15-5.3).)

### B.  Pre-judgment Interest

Avis asks the Court to compute pre-judgment interest based on New York's 9% statutory rate for pre-judgment interest.  (Dkt. 225 at 1-4.)  JD2 contends that the lower rate under New Jersey statute should apply.  (Dkt. 228 at 1.)

In a prior order, the Court determined that Avis's claim against JD2 for breach of warranty is governed by New Jersey law, whereas Avis's claims against JD2 and Geotrack for negligence are governed by New York law.  *See Avis Budget Car Rental, LLC v. JD2 Envt'l, Inc.*, 2017 WL 3671554, at *1-3 (E.D.N.Y. Aug. 23, 2017).  In the verdict, the jury found in favor of Avis on all three of these claims, *i.e.*, the breach of warranty claim against JD2 and each of the separate negligence claims against JD2 and Geotrack.  (Dkt. 222.)  Under New York choice of law rules, which this Court must apply in this diversity action, "the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim."  *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (alteration in original) (quoting *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131 (2d Cir. 1984)).  For purposes of computing pre-judgment interest, the Court construes the "main" claim to be the negligence claims against JD2 and Geotrack.  Thus, New York law applies to the calculation of interest on the damages award in this case.

JD2 contends that New Jersey law should determine the rate of pre-judgment interest because the services contract between Avis and JD2 contained a choice-of-law clause selecting New Jersey as the governing law.  (Dkt. 228 at 1-2.)  JD2 fails to explain, however, why the parties' selection of New Jersey law in their contract would override the choice-of-law analysis that applies to Avis's negligence claim against both JD2 and Geotrack.  (*Id.*)  Although JD2 insinuates that New Jersey's lower rate of pre-judgment interest should be applied to prevent "forum shopping"

(*id.* at 2), the Court finds no such forum shopping here, where Avis merely seeks to apply the pre-judgment interest rate of the state whose substantive law gives rise to Avis's claim for negligence. In addition, the Court finds no merit in JD2's argument that Avis "waived" its right to seek the New York pre-judgment interest rate by arguing that New Jersey law applies to the contract between Avis and JD2. (*Id.* at 2.) Avis's decision to enforce the choice-of-law provision in its contract with JD2, and to its breach of contract claim against JD2, does not foreclose Avis from also availing itself of the tort remedies to which it is entitled under New York law.

For these reasons, the Court holds that pre-judgment interest shall be computed based on New York's statutory rate of 9%. *See* NY CPLR § 5004. The parties agree that the period of time over which such interest accrued was December 15, 2011 through August 24, 2017. (Dkt. 235 at 5; Dkt. 228 at 3.) Accordingly, the total pre-judgment interest that shall be included in the amended judgment ("Amended Judgment") is $715,973.14.

### C. Post-judgment Interest

Although pre-judgment interest is calculated under state law, the federal rate of interest under 28 U.S.C. § 1961 applies to the post-judgment interest accruing on the total judgment amount. *See Cappiello v. ICD Pubs., Inc.*, 720 F.3d 109, 112 (2d Cir. 2013). Accordingly, the Amended Judgment orders payment of post-judgment interest pursuant to 28 U.S.C. § 1961.

### II. Avis's Motion for Attorney's Fees and Costs

JD2 performed design and oversight services on the Project pursuant to a written agreement (the "Agreement") with Avis. In this action, Avis asserted three claims against JD2 based on the Agreement: (i) breach of contract, (ii) breach of warranty, and (iii) contractual indemnification. The jury found in favor of JD2 on Avis's claim for breach of contract, and the jury found in favor

of Avis on Avis's claim for breach of warranty. (Dkt. 222.)[3] Avis now seeks to recover the attorney's fees and litigation costs it expended in this action pursuant to a fee-shifting provision in the Agreement, which provides: "If suit is filed hereon, the prevailing party shall, in addition to any other remedy, be entitled to reasonable attorneys' fees and costs." (Dkt. 231-1 at 4.)

As a threshold matter, the Court finds that Avis is a "prevailing party" within the meaning of the fee-shifting provision of the Agreement. As part of the verdict, the jury found that JD2 breached its warranty to perform its obligations under the Agreement with the requisite degree of skill and care. (Dkt. 222; Dkt. 231-1 at 4.) Indeed, JD2 does not dispute that Avis is a prevailing party under the fee-shifting provision of the agreement. (*See* Dkts. 228, 243.) Instead, JD2 argues that the Court should deny or reduce the amount of attorney's fees and costs that Avis seeks to recover as unreasonable. (*See* Dkt. 243.) Accordingly, the Court has reviewed the reasonableness of Avis's application under the governing legal standards.

**A. Legal Standards**

The fee-shifting provision in the Agreement entitles Avis to recover "reasonable" attorney's fees and costs incurred in this litigation. As the party seeking reimbursement for attorney's fees and costs, Avis "bears the burden of proving the reasonableness and necessity of hours spent and rates charged." *Morin v. Nu-Way Plastering Inc.*, No. 03-CV-405, 2005 WL

---

[3] Avis's claim for contractual indemnification was not sent to the jury because the resolution of that claim depended entirely on the outcome of Avis's claim against JD2 for negligence. The indemnification provision in question states that "[e]ach party agrees to indemnify, hold harmless, and defend the other from and against all loss, cost and expense to the extent arising out of any bodily injury and property damage caused by the negligence or intentional misconduct or omissions of the indemnifying party, its agents, employees or subcontractors." (Dkt. 231-1 at 3.) Thus, to the extent the jury found JD2 liable in negligence for the property damage of which Avis complains in this lawsuit, JD2 is liable to Avis for indemnification under the Agreement to the same extent.

3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

In determining the reasonableness of an application for costs and fees, a district court should seek to determine what "a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). In making this assessment, the district court should consider, among other things, the twelve *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, 14-CV-5207(KAM)(JO), 2016 WL 4179943, at *2 n.2 (E.D.N.Y. Aug. 5, 2016) (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1971)). In addition, where, as here, the prevailing party has actually incurred and paid attorney's fees during the litigation, "the court will order the losing party to pay the amounts incurred by the prevailing party as long as the amounts are not unreasonable." *Id.* at *2-3 (citing *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir. 1987)).

**B. Avis's Fee Application**

In its application for costs and fees, Avis seeks reimbursement for $839,931.47 in legal fees paid to its counsel in this action, Nixon Peabody LLP, and $67,445.20 in litigation costs. (Dkt. 246 ¶ 26.)

### 1. Attorney's Fees

Avis seeks reimbursement for the $839,931.47 it paid in legal fees to its counsel, Nixon Peabody LLP, for 2,486 hours of work by attorneys and paralegals over the course of this five-year litigation. In support of its fee application, Avis has submitted voluminous billing records documenting the billable work performed by Nixon Peabody attorneys and paralegals. (Dkts. 230, 230-1, 246.) Avis also submitted a chart breaking down the hours worked and applicable billing rate for each of the attorneys and paralegals whose work was billed to Avis in connection with this litigation. (Dkt. 230 ¶ 50.)

JD2 contends that the attorney's fees for which Avis seeks reimbursement were unreasonable because of the billing rates charged by Nixon Peabody and the number of hours billed. According to JD2, the billing rates for several Nixon Peabody paralegals and attorneys are inflated and should be reduced for purposes of any fee award. (*See* Dkt. 243.) In addition, JD2 argues that the number of attorney and paralegal hours on various aspects of the litigation were unreasonable and should not be credited for purposes of any fee award. (*Id.*) Finally, JD2 argues that certain of Nixon Peabody's billing entries are insufficiently detailed to support an award of fees. (*Id.*) Based on these alleged deficiencies, JD2 asks the Court to apply lower hourly rates and reduce the overall time expenditure "by at least 50%" in granting Avis's motion for attorney's fees. (*Id.*)

Aside from taking a few pot-shots at a hand-picked group of time entries submitted by Avis (*see* Dkt. 243 at ECF 13-15), JD2 has given the Court little guidance as to which of the attorney's fees that Avis incurred in this litigation were "unreasonable" for purposes of Avis's fee application. Indeed, JD2 acknowledges that it "does not set forth a line by line analysis of each time entry" submitted by Avis "[f]or the sake of brevity and the preservation of resources." (*Id.* at ECF 13.)

Instead, JD2 points to a few recent cases in this district in which attorney billing rates were lower than those that Avis paid to Nixon Peabody in this case (*see id.* at ECF 9-10), and argues generally that Nixon Peabody should have litigated this action using lower-cost legal personnel and fewer hours (*see id.* at ECF 6-9, 12-13).

With respect to the reasonableness of the hourly rates that Avis paid in this litigation, the Court finds that the hourly rates charged by Nixon Peabody were reasonable. At the top end, Nixon Peabody charged $485 per hour for work performed by its lead trial counsel, Joseph J. Ortego, who is the co-leader of Nixon Peabody's Commercial Litigation practice, has practiced law for more than 37 years, and has tried more than 100 cases to verdict in that time. (Dkts. 230-1 ¶ 50, 230-2.) Similar rates, between $345 and $485, were charged for other Nixon Peabody partners who worked on the litigation, each of whom had between 11 and 32 years of experience. (Dkt. 230-1 ¶ 50.) Nixon Peabody charged lower rates, between $245 and $335, for work performed by associate attorneys with between 1 and 15 years of experience. (*Id.*) Finally, for paralegal work, Nixon Peabody charged between $180 and $275 for paralegals with experience ranging from 5 to 26 years. (*Id.*) Based on its familiarity with the legal market in this district, other applications for attorney's fees in this district, and recent decisions issued by other judges in this district, the Court finds the fees charged by Nixon Peabody are well within the reasonable range in the relevant market. *See, e.g.*, *U.S. ex rel. Doe v. Acupath Labs., Inc.*, No. 10-CV-4819, 2015 WL 1293019, at *10 (E.D.N.Y. Mar. 19, 2015); *Olympus Imaging Am., Inc. v. Reifschneider S.A.*, No. 10-CV-4516 (ILG), 2011 WL 2490596 (E.D.N.Y. Jun. 22, 2011); *Carco Grp., Inc. v. Maconachy*, No. 05-CV-6038 (ARL), 2011 WL 6012426, at *3 (E.D.N.Y. Dec. 1, 2011). Furthermore, the fact that Avis in fact paid the requested hourly rates for the work performed in this litigation is strongly indicative that the rates were reasonable. *See Andrews v. City of New*

*York,* 118 F. Supp. 3d 630, 639 (S.D.N.Y. 2015) ("[T]he amount actually paid to an attorney by paying clients is strong evidence of a reasonable market rate."). The empirical evidence of market rates that Avis submitted in support of its application (Dkt. 246-2) further corroborates the Court's finding of reasonableness. JD2's suggestion that the Court should place a hard cap of $400 per hour for partner time, $250 for associate time, and $150 for paralegal time (Dkt. 243 at ECF 9-11) is neither required by, nor consistent with, the prevailing rates in this district. In short, the Court finds that the rates charged by Nixon Peabody were reasonable.

With respect to the reasonableness of the hours worked by Nixon Peabody personnel in this litigation, the Court reviewed the time entries submitted by Nixon Peabody in support of its fee application (Dkt. 230-1).[4] In particular, the Court has reviewed these entries in consideration of JD2's assertion that Avis "has proffered inadequate records, including insufficient descriptions of the nature of the work done, such that the Court cannot reasonably be expected to decipher whether Nixon Peabody's work was justified or excessive, redundant, or otherwise unnecessary." (Dkt. 243 at ECF 13.) Based on this review, the Court makes the following reductions to Avis's fee award:

---

[4] The Court cannot help but marvel at JD2's decision to not submit a line-by-line challenge to Avis's time entries, yet expect the Court to conduct that same labor-intensive review to assess the reasonableness of the hours worked by Nixon Peabody personnel.

| Record Citation[5] | Date | Name | Rate | Hours Recorded | Revised Hours | Reason |
|---|---|---|---|---|---|---|
| Pg. 31/244 | 1/7/13 | J. Herman | $230 | 1.40 | .40 | General background on court procedures not compensable. |
| Pg. 50/244 | 6/4/13 | K. Halpern | $250 | 4.90 | 2.00 | General background research on default judgment practice not compensable. |
| Pg. 50/244 | 6/19/13 | K. Halpern | $250 | 2.70 | 1.00 | General background research on proofs of claim not compensable. |
| Pg. 92/244 | 2/25/14-2/27/14 | T. Mealiffe | $345 | 11 | 4 | Excessive time spent on settlement statement not integral to pursuit of claims in litigation. |
| Pg. 111/244 | 5/8/14 | B. Widro | $245 | 3.00 | 1.00 | Excessive time spent on general background research re: obtaining telephone records for litigation. |
| Pg. 127/244 | 10/3/14 | T. Mealiffe | $345 | 2.50 | 0 | Duplicative of prior research re: joint and several liability. |
| Pg. 133/244 | 12/8/14 | C. Hampton | $340 | 5.40 | 4.00 | Excessive time spent on general legal research. |
| Pg. 203/244 | 6/19/17 | E. Goergen | $300 | 4.60 | 0 | General background research on federal jurisdiction not compensable. |
| Pg. 204/244 | 6/20/17 | E. Goergen | $300 | 5.30 | 0 | Summary of background facts and court decisions in this |

---

[5] All citations in this table are to the Nixon Peabody time records submitted in support of Avis's fee application.  (Dkt. 230-1.)

| Record Citation[5] | Date | Name | Rate | Hours Recorded | Revised Hours | Reason |
|---|---|---|---|---|---|---|
| | | | | | | very litigation not compensable. |
| Pg. 207/244 | 6/21/17 | E. Goergen | $300 | 5.80 | 2.00 | Excessive time spent drafting summary of Avis's causes of action for joint pre-trial order. |
| Pg. 211/244 | 9/15/17 | J. Garcia | $300 | 7.00 | 3.00 | Excessive time spent researching general legal doctrines. |
| Pg. 223/244 | 8/11/17 | L. DesRos. | $300 | 4.90 | 0 | General background research on trial procedure not compensable. |
| Pg. 237/244 | 8/14/17 | B. Widro | $245 | 2.50 | 0 | Travel time not compensable. |

In total, the Court reduces Avis's award of attorney's fees by 43.6 hours, amounting to a reduction of $13,016. Accounting for this reduction, the Court finds that Avis is entitled to reimbursement of reasonable attorney's fees in the amount of $826,915.47.

As a crosscheck, the Court has also considered the reasonableness of Avis's $826,915.47 in attorney's fees in light of the twelve *Johnson* factors. *Johnson*, 488 F.2d at 717-19. Under those factors, the Court observes that this litigation has gone on for five years and has involved, *inter alia*: (1) extensive third-party practice; (2) two years of document and deposition discovery, discovery motions and conferences with the magistrate judge; (3) two rounds of summary judgment motions;[6] (4) expert discovery and reports; and (5) a two-week jury trial. Although the claims alleged were fairly straightforward claims of negligence and breach of contract, the various

---

[6] As Avis rightly observed in its memoranda, JD2 initiated a second round of summary judgment practice on the eve of trial by asking for summary judgment findings in the guise of a motion *in limine*.

legal issues they raised, including a novel question of New York statutory law and difficult questions of choice of law, made this a more complex case than the typical negligence or breach-of-contract action. The results obtained by Nixon Peabody—a full recovery of all damages sought by Avis—further reinforces the reasonableness of the work performed. In short, viewing the fee award against the backdrop of the litigation as a whole, the Court finds nothing unreasonable about the award of $826,915.47 for Nixon Peabody's work on this litigation.

### 2. Litigation Costs

Avis also seeks reimbursement for $67,445.20 in litigation costs. (Dkt. 247 ¶ 5.) Avis has supplied receipts and other documentation of these litigation costs, which Avis actually incurred and paid during the course of this litigation. (Dkt. 230-1, 231-2, 247 ¶¶ 5-6.) JD2 does not challenge any of the litigation costs that Avis seeks to recover. (Dkt. 243.) The Court has reviewed these litigation costs and finds them reasonable in their entirety.

In summary, the Court grants Avis's application for attorney's fees and litigation costs in the amounts of $826,915.47 and $67,445.20, respectively.

### III. JD2's Motion for Judgment as a Matter of Law Against Gemstar

In its motion for judgment as a matter of law against Gemstar (Dkt. 239), JD2 seeks indemnification from Gemstar for the 35% portion of Avis's damages for which fault was apportioned to Geotrack. JD2 also seeks indemnification from Gemstar for 35% of any attorney's

fees and litigation costs that JD2 is required to pay under the fee-shifting provisions of its agreement with Avis. (*Id.* at 8.)

JD2 seeks this indemnification under a provision of a subcontract between JD2 and Geotrack that set the terms of Geotrack's work on the JFK Project. The indemnification provision states that Gemstar would:

> save harmless and indemnify [JD2] against all loss, liability, damages and expense caused by or in connection with the work of [Gemstar] hereunder. It is understood that the intent of this provision is to absolve and protect [JD2] from any and all loss, liability, damage, expense and injury of any kind whatsoever, to all persons, whether employees or otherwise, and to all property caused by or connected with the work of [Gemstar] hereunder.

(Dkt. 252-1 at 1.)

During a charge conference in the trial in this matter, the Court and counsel for JD2 and Gemstar discussed the scope of this indemnification provision. (Tr. 2162-2163.) In the course of that discussion, both parties' counsel agreed that the property damage giving rise to this litigation was caused "in connection with the work of [Gemstar]" under the subcontract. (*See id.*) Indeed, as a result of that agreement between counsel for JD2 and counsel for Gemstar, the Court did not submit to the jury the question of whether Avis's damages fall within the scope of the indemnification provision at issue. (*Id.*) Counsel for JD2 explicitly relied on counsel for Gemstar's stipulation to this fact in agreeing to not submit JD2's claim for contractual indemnification to the jury. (*Id.*) Based on that stipulation, the Court finds that JD2's exposure

for Geotrack's 35% portion of the damages award to Avis is within the scope of the

indemnification provision.[7]

Gemstar, however, contends that JD2's claim for contractual indemnification is barred by

New York General Obligation Law § 5-322.1, which provides, in relevant part:

> A covenant, promise, agreement or understanding in, or in connection with or
> collateral to a contract or agreement relative to the construction, alteration, repair
> or maintenance of a building, structure, appurtenances and appliances including
> moving, demolition and excavating connected therewith, purporting to indemnify
> or hold harmless the promisee against liability for damage arising out of bodily
> injury to persons or damage to property contributed to, caused by or resulting from
> the negligence of the promisee, his agents or employees, or indemnitee, whether
> such negligence be in whole or in part, is against public policy and is void and
> unenforceable . . . .

N.Y. Gen. Oblig. Law § 5-322.1.

In *Irti Brick & Concrete Corp. v. Aetna Cas. & Sur. Co.*, the New York Court of Appeals

ruled that Section 5-322.1 invalidates indemnification provisions that purport to indemnify general

contractors for their own negligence. 89 N.Y.2d 786, 793-94 (1997). The court in *Irti Brick*

---

[7] Gemstar now seeks to walk back its stipulation, arguing that it stipulated only that "<u>Gemstar's</u> alleged negligence was within the scope of the indemnity provision." (Dkt. 251 at 13 (emphasis in original).) But that interpretation of the record is untenable. The focus of the discussion between the Court and counsel for JD2 and Gemstar was not whether New York's anti-indemnity provision barred JD2 from recovering for its own negligence—an issue that the parties agreed the Court should decide post-trial—but rather, whether the indemnification provision in JD2's and Gemstar's contract was triggered simply by the damages being "in connection with" Gemstar's work under the contract, such that it was necessary for the jury to make such a finding at trial. (Tr. 2159-60.) The discussion made clear that JD2's indemnity claim against Gemstar was designed such that, "if [JD2] [is] found liable and [has] to pay some money . . . that would be the damage that [JD2] [would] want mitigated by another party." (Tr. 2158.) Thus, the only coherent interpretation of JD2's and Gemstar's stipulation concerning the scope of the indemnification provision is the one pressed by JD2—namely, that damages incurred by JD2 due to its joint and several liability for the acts of other parties (such as Geotrack) fall within the indemnification provision, regardless of Gemstar's negligence or lack thereof, because they arise "in connection with" Gemstar's work on the JFK Project. Gemstar must be held to this stipulation, given the Court's and JD2's reliance on that stipulation in not sending JD2's indemnification claim to the jury. However, as discussed below, this stipulation ultimately must give way to New York's prohibition on such indemnification agreements.

expressly ruled, among other things, that a general contractor cannot enforce an indemnification provision in whole *or in part* when the indemnification provision purports to insulate the general contractor for its own negligence. *Id.* Pursuant to the Court of Appeals decision in *Irti Brick*, courts in New York have consistently held that indemnification provisions purporting to insulate a general contractor from liability for its own negligence are unenforceable in their entirety, unless the indemnification provision contains a clause limiting the subcontractor's obligation to that permitted by law or to the subcontractor's own negligence. *See, e.g.*, *Rodriguez v. City of N.Y.*, 13-CV-327(JG)(CLP), 2015 WL 4078618, at *1 (E.D.N.Y. July 6, 2015); *Smith v. Nestle Purina Petcare Co.*, 105 A.D.3d 1384, 1387 (N.Y. App. Div. 2013).

Given this authority, the Court finds that the indemnification provision that JD2 seeks to enforce against Gemstar is unenforceable as a matter of New York law. By its clear and unambiguous terms, the indemnification provision purports to entitle JD2 to indemnification from Gemstar for JD2's own negligence. Therefore, New York General Obligation Law § 5-322.1 and related caselaw prohibit JD2 from enforcing the indemnification provision, even with respect to the portion of Avis's damages that the jury apportioned to Defendant Geotrack. Accordingly, the Court denies JD2's motion for judgment as a matter of law as to its claim for contractual indemnification against Gemstar.[8]

### IV. JD2's and Gemstar's Motions for Judgment Notwithstanding the Verdict

#### A. Background

Before trial, JD2 and Gemstar filed motions *in limine* seeking a ruling that the Port Authority is vicariously liable for any apportionment of fault assigned to Defendant Geotrack. By

---

[8] Having ruled that JD2 is barred from enforcing the indemnification provision, the Court need not decide whether the indemnification provision, if valid, would entitle JD2 to recover from Gemstar 35% of JD2's obligation to Avis for its attorney's fees in this action.

order dated August 11, 2017, the Court denied JD2's and Gemstar's motion to find the Port Authority vicariously liable for the negligent acts of Geotrack on the theory that the mark-out services performed by Geotrack were an "inherently dangerous activity." *Avis Budget Car Rental, LLC v. JD2 Envt'l, Inc.*, 2017 WL 3476044, at *4-5 (E.D.N.Y. Aug. 11, 2017). However, the Court ruled that the Port Authority was vicariously liable for the negligent acts of Geotrack because, as an "operator" of the sewer line that was struck in this case, the Port Authority had a non-delegable duty under New York General Business Law § 763 to accurately and with due care designate the location of its underground facilities upon receipt of a notification effective under the one-call notification system established in Article 36 of the New York General Business Law, N.Y. Gen. Bus. Law §§ 760-67. *Id.* at *9. The Court also indicated, however, that it would vacate its finding of vicariously liability if, within a specified time, the Port Authority could submit evidence showing that it was not in fact the "operator" of the sewer line at issue in this case. *Id.* at *8-9. The Port Authority thereafter filed a motion for reconsideration of the Court's finding of vicarious liability, with supporting testimony and documentation suggesting that the Port Authority was not the "operator" of the sewer line in question and, therefore, did not have any mark-out duties under Section 763 of the General Business Law. (Dkt. 202.) In response to the Port Authority's motion for reconsideration, the Court, on the eve of trial and in an abundance of caution, granted the Port Authority's motion for reconsideration and vacated the August 11, 2017 Order "to the extent it held as a matter of law that the Port Authority was the 'operator' of the sewer line in question within the meaning of New York General Business Law § 763[,]" *Avis Budget Car Rental, LLC v. JD2 Envt'l, Inc.*, 2017 WL 3668767, at *1 (E.D.N.Y. Aug. 22, 2017), to allow the parties to offer evidence at trial on this issue.

At trial, the jury was charged, in relevant part, with the following questions related to the Port Authority's vicarious liability for negligent acts by Geotrack: "[15: ] Do the utility locating services (or 'mark-outs') assigned by the Port Authority to Geotrack constitute 'inherently dangerous work'? . . . [16: ] Was the Port Authority the operator of the underground sanitary line that was damaged during the Avis JFK Project?" (Dkt. 222 at 6.)  The jury answered "No" to both of these questions, which amounted to a finding that the Port Authority is not vicariously liable for the 35% of fault that the jury apportioned to Geotrack.  In their motions for judgment notwithstanding the verdict, JD2 and Gemstar ask the Court in effect to overrule both of these findings by the jury.

**B. Legal Standard**

The standard on a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 is similar to the standard on a motion for summary judgment.  *This is Me v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) ("The same standard that applies to a pretrial motion for summary judgment pursuant to Fed. R. Civ. P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50.").  Judgment as a matter of law is appropriate where "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  *Perry v. Metro. Suburban Bus. Auth.*, 390 F. Supp. 2d 251, 257 (E.D.N.Y. 2005).  Where a jury has already returned a verdict, judgment as a matter of law is rarely appropriate, and a "verdict should be directed in such instances only if the evidence in favor of the movant is so overwhelming that the jury could rationally reach no other result."  *Broadnax v. City of New Haven*, 415 F.3d 265, 270 (2d Cir. 2005) (quoting *Granite Computer Leasing Corp. v. Travelers Indem. Co.*, 894 F.2d 547, 551 (2d Cir. 1990)).

### C. Application

#### 1. Inherently Dangerous Work

The Court can quickly dispose of the first ground on which JD2 and Gemstar move for judgment as a matter of law. As the Court summarized in its August 11, 2017 order, in most cases, "whether . . . work is inherently dangerous is . . . a question of fact to be determined by the jury." *Avis*, 2017 WL 3476044, at *4 (quoting *Rosenberg v. Equitable Life Assur. Socy.*, 79 N.Y.2d 663, 669 (1992)). Indeed, the caselaw in New York illustrates that the question of whether work is "inherently dangerous" is extremely fact intensive and depends on the entirety of the circumstances that surround the work in question. *See id.* (collecting cases). In this case, the jury received evidence concerning the location of the Project, the proximity of the Project site to roads and other trafficked areas, the scope of excavation being performed, the various safety responsibilities shared by participants in the Project, the types of underground utilities that ran under the dig site, and the various risks associated with performing excavation in the area. Based on that evidence, the jury determined that the mark-out work performed by Geotrack was not "inherently dangerous" within the meaning of New York law. Neither JD2 nor Geotrack has pointed to any error in the Court's instructions to the jury on the question of "inherently dangerous work," nor have they identified any New York caselaw suggesting that the jury's determination was incorrect as a matter of law. Accordingly, the Court denies JD2's and Gemstar's request for a finding that Geotrack's mark-out duties were "inherently dangerous work" rendering the Port Authority vicariously liable.

#### 2. Non-delegable Duty under N.Y. Gen. Bus. Law § 763

In the August 11, 2017 order, the Court held, as a matter of law, that an "operator" of an underground utility has a non-delegable duty under New York General Business Law § 763 to accurately and with due care designate the location of its underground facilities upon receipt of a

notification effective under the one-call notification system established in Article 36 of the New York General Business Law, N.Y. Gen. Bus. Law §§ 760-67. *Avis*, 2017 WL 3476044, at *9. None of the parties challenges this legal ruling in their pending motions. Rather, JD2 and Gemstar argue that, contrary to the jury's finding, the Port Authority was the "operator" of the sewer line in question within the meaning of Section 763 and, therefore, is vicariously liable for the negligent acts of Geotrack in performing its mark-out of the sewer line. (Dkts. 240, 244.) Avis and the Port Authority both oppose JD2's and Gemstar's motions.

The jury was instructed as follows concerning the meaning of an "operator" under Section 763 of the General Business Law:

> You have heard the parties argue about whether the Port Authority is the operator of the underground sanitary line that was damaged during the Avis JFK project. An operator is a person or entity that operates an underground facility or facilities to furnish any of the following services or materials: electricity, gases, steam, liquid petroleum products, telephone or telegraph communications, cable television, sewage removal, traffic control systems, or water.

(Dkt. 221 (Jury Instructions).) In its verdict, the jury found that the Port Authority was not the operator of the sewer line in question. (Dkt. 222.)

As a threshold matter, the Court notes that its consideration of JD2's and Gemstar's motions for judgment notwithstanding the verdict is limited to "the evidence that was actually admitted at trial, not the earlier summary judgment records" or the new records that JD2 has attached to its post-trial motion. *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004); *see also LNC Investments, Inc. v. First Fidelity Bank*, 126 F. Supp. 2d 778, 785 (S.D.N.Y. 2001) ("[I]t is inherent in the standards which govern the granting or denial of a Rule 50(b) . . . motion that the motion must be determined on the basis of the evidence the trial judge admitted and the jury considered.").

In consideration of the evidence admitted at trial, the Court finds that a rational jury could have found, as the jury here found, that JD2 and Gemstar did not carry their burden to establish that the Port Authority was the "operator" of the sewer line in question. Indeed, there are numerous evidentiary grounds on which the jury might have made that determination.[9] For example, none of the witnesses who testified at trial had personal knowledge of whether the Port Authority owned, monitored, or maintained the sewer line in question, and neither JD2 nor Gemstar adduced any documentary evidence to that effect. In the absence of such evidence, the jury was within its discretion to find that JD2 and Gemstar had simply failed to satisfy their burden of proof as to whether the Port Authority operated the sewer line.[10] In addition, the jury was also permitted to credit the testimony of Port Authority engineer Christopher Ragnauth, who testified, based on personal knowledge, that the Port Authority does not have a responsibility to maintain the sewer lines running through JFK. (Tr. 2061-2062.)

To be sure, some of the evidence adduced at trial suggested that the Port Authority was the operator of the sewer line in question. Evidence at trial showed that the Port Authority was listed as the operator of the sewer line on One-Call notification records, the Port Authority in fact

---

[9] JD2 contends that the Port Authority "admitted" in its summary judgment papers that it was the operator of the sewer line in question. However, even assuming that JD2 has construed those supposed "admissions" correctly, they are not binding at this phase of the litigation. *See* Fed. R. Civ. P. 56(g) (granting the district court discretion, when it denies a motion for summary judgment, to "enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as establish in the [remainder of the] case"); *see also Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 130 (2d Cir. 1999) ("The district court's judgment on the verdict after a full trial on the merits [ ] supersedes the earlier summary judgment proceedings.").

[10] For example, JD2's and Gemstar's experts, Brian Streb and Robert O'Connor, purported to provide testimony concerning whether the Port Authority owned or operated the sewer line. Yet neither expert had personal knowledge of that subject, nor did they identify a competent factual basis on which to infer that the Port Authority operated the sewer line. (Tr. 1878, 1907-1921, 2028.)

received a One-Call notification in regard to the sewer line, the Port Authority hired Geotrack to mark out the underground sewer line, and the Port Authority generally performs mark-outs only for the utilities that it owns and operates. (Tr. 1539, 1585, 1489-1490, 1188-1189.) As JD2 and Gemstar argue, this evidence is all consistent with the notion that the Port Authority was the operator of the sewer line in question. (Dkt. 240-2 at ECF 12-20; Dkt. 244 at 9-13.) Given this evidence, the jury may very well have been within its discretion to find that the Port Authority was the operator of the sewer. However, given the absence of any witness with personal knowledge of whether the Port Authority was the operator of the sewer line, as well as the contrary evidence, the Court cannot find, as a matter of law, that "the evidence in favor of the movant is so overwhelming that the jury could rationally reach no other result." *Broadnax*, 415 F.3d at 270.

Finally, the Court addresses JD2's cursory request for a new trial pursuant to Federal Rule of Civil Procedure 59. (Dkt. 240-2 at ECF 2 ("Alternatively, this Court should order a new trial on the issue [of the Port Authority's vicarious liability].").) Although it requests a new trial as an "alternative" form of relief, JD2 fails to state the grounds on which a new trial should be granted. "[A] court considering a Rule 59 motion for a new trial must bear in mind that the court should only grant such a motion when the jury's verdict is egregious." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir.1998) (citation omitted). "The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive." *Newton v. City of New York*, 171 F. Supp. 3d 156, 164 (S.D.N.Y. 2016). Here, although JD2 requested a new trial on the issue of the Port Authority's vicarious liability as an "alternative" remedy (Dkt. 240-2 at ECF 2), JD2 has not identified the specific grounds on which a new trial should be granted. Indeed, considering the

trial proceedings and the verdict as a whole, the Court finds no such ground. Thus, JD2's perfunctory motion for a new trial is denied.

## CONCLUSION

For the foregoing reasons, the Court resolves the parties' various post-trial motions as follows: (1) Avis's motion to amend the judgment (Dkt. 225) is GRANTED and the Clerk of Court is directed to enter the Amended Judgment attached to this Order; (2) Avis's motion for attorney's fees and costs (Dkt. 229) is GRANTED in part and DENIED in part, and JD2 is ordered to reimburse Avis for $826,915.47 in attorney's fees and $67,445.20 in litigation costs; (3) JD2's motion for judgment as a matter of law against Gemstar for contractual indemnity (Dkt. 239) is DENIED; (5) JD2's and Gemstar's motions for judgment notwithstanding the verdict as to the Port Authority's vicarious liability for Geotrack's negligence (Dkt. 240, 244) are DENIED.


SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge


Dated: Brooklyn, New York
      March 6, 2018